# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

JULIE A. SU,
Acting Secretary of Labor,
United States Department of Labor,

      Plaintiff,

    v.

      CIVIL ACTION NO. 3:23-CV-00513

UMR, INC.,

      Defendant.


# BRIEF IN SUPPORT OF DEFENDANT UMR, INC.'S
# <u>MOTION TO DISMISS IN PART</u>

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 3

    I.    ERISA's Statutory Framework ................................................................. 3

    II.   The Complaint Challenging UMR's Benefits Determinations ................... 7

STANDARD OF REVIEW .................................................................................. 9

ARGUMENT ..................................................................................................... 10

    I.    The Court Should Dismiss The Claims For Retrospective Relief Under
         § 502(a)(5) ........................................................................................... 10

         A.   Equitable Relief Is Unavailable Because § 502(a)(1)(B) Provides An
              Adequate Remedy ........................................................................... 11

         B.   Readjudication Is Unavailable Because It Is Not A Traditional Equitable
              Remedy ........................................................................................... 17

    II.   The Court Should Dismiss The Claims For Retrospective Relief Under
         § 502(a)(2) ........................................................................................... 20

         A.   Section 502(a)(2) Does Not Apply Because The Complaint Does Not Seek
              Relief On Behalf Of Any Plan ......................................................... 20

         B.   Relief Is Also Unavailable For The Same Reasons Relief Is Unavailable
              For The Acting Secretary's Retrospective § 502(a)(5) Claims ........... 23

CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)................................................................................3, 4, 10, 11

*Agostino v. Quest Diagnostics Inc.*,
256 F.R.D. 437 (D.N.J. 2009).............................................................................17

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
No. 14-cv-2139, 2016 WL 6601662 (C.D. Cal. Feb. 3, 2016) ........................13, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................9

*Berceanu v. UMR, Inc.*,
No. 19-cv-568, 2021 WL 5918667 (W.D. Wis. Dec. 15, 2021)............................2, 11, 13, 19

*Berger v. NCAA*,
843 F.3d 285 (7th Cir. 2016) ................................................................................9

*Burns v. Orthotek Inc. Emps. Pension Plan & Tr.*,
No. 08-cv-190, 2009 WL 631245 (N.D. Ind. Mar. 11, 2009).....................4, 11, 24

*Chorosevic v. MetLife Choices*,
No. 05-cv-2394, 2009 WL 723357 (E.D. Mo. Mar. 17, 2009).............................20

*Cleghorn v. Blue Shield of Cal.*,
408 F.3d 1222 (9th Cir. 2005) .............................................................................11

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*,
102 F.3d 712 (4th Cir. 1996) ................................................................5, 12, 14, 15, 23

*Craft v. Health Care Serv. Corp.*,
No. 14-cv-5853, 2016 WL 1270433 (N.D. Ill. Mar. 31, 2016) ...........................12

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989)..............................................................................................18

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
503 U.S. 60 (1992)................................................................................................16

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002)..............................................................................2, 6, 17, 20

*Greer v. Operating Eng'rs Loc. 324 Pension Fund*,
No. 17-cv-11832, 2017 WL 3891785 (E.D. Mich. Sept. 6, 2017) .....................4, 12

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995)..............................................................................................14

## TABLE OF AUTHORITIES

*(continued)*

Page(s)

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000).............................................................................................4, 15, 24

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
   571 U.S. 99 (2013)....................................................................................................5, 16

*Hickey v. O'Bannon*,
   287 F.3d 656 (7th Cir. 2002) ........................................................................................9

*Holmstrom v. Metro. Life Ins. Co.*,
   615 F.3d 758 (7th Cir. 2010) ...................................................................5, 11, 13, 18

*Johnson v. Bankers Life & Cas. Co.*,
   973 F. Supp. 2d 950 (W.D. Wis. 2013) ........................................................................9

*Kaiser v. Wis. Energy Conservation Corp.*,
   No. 14-cv-762, 2015 WL 3397548 (W.D. Wis. May 26, 2015).........................................9, 13

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
   634 F.3d 883 (7th Cir. 2011) ......................................................................................19

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   552 U.S. 248 (2008)...........................................................................................16, 22, 23

*Lee v. Burkhart*,
   991 F.2d 1004 (2d Cir. 1993)......................................................................................22

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985)....................................................................3, 7, 15, 20, 21, 22

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993).......................................................................................3, 6, 14, 24

*Mondry v. Am. Fam. Mut. Ins. Co.*,
   557 F.3d 781 (7th Cir. 2009) .................................................................................2, 6, 13

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992).....................................................................................................16

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
   514 U.S. 645 (1995).......................................................................................................3

*Orr v. Assurant Emp. Benefits*,
   786 F.3d 596 (7th Cir. 2015) ....................................................................................5, 16

*Papasan v. Allain*,
   478 U.S. 265 (1986).....................................................................................................10

*Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*,
   195 F.3d 975 (7th Cir. 1999) ...................................................................................18, 19

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Quinn v. Blue Cross & Blue Shield Ass'n*,
   161 F.3d 472 (7th Cir. 1998) .................................................................................11

*Randall v. Rolls-Royce Corp.*,
   637 F.3d 818 (7th Cir. 2011) .................................................................................19

*Reich v. Lancaster*,
   843 F. Supp. 194 (N.D. Tex. 1993) .........................................................................6

*Rose v. PSA Airlines, Inc.*,
   No. 21-2207, 2023 WL 5839282 (4th Cir. 2023) .............................................17, 24

*N.R. ex rel. S.R. v. Raytheon Co.*,
   24 F.4th 740 (1st Cir. 2022).................................................................................22

*Saffle v. Sierra Pac. Power Co.*,
   85 F.3d 455 (9th Cir. 1996) .................................................................................18

*Sec'y of Lab. v. Macy's, Inc.*,
   No. 17-cv-541, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021) ...................2, 6, 13, 14, 19, 20

*Smith v. Med. Benefit Adm'rs Grp., Inc.*,
   639 F.3d 277 (7th Cir. 2011) .............................................................................7, 22

*Sumpter v. Metro. Life Ins. Co.*,
   683 F. App'x 519 (7th Cir. 2017) ...........................................................................13

*Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC*,
   741 F.3d 819 (7th Cir. 2014) .................................................................................10

*Univ. of Wis. Hosp. & Clinics, Inc. v. Kraft Foods Glob., Inc. Grp. Benefits Plan*,
   28 F. Supp. 3d 833 (W.D. Wis. 2014) .....................................................................11

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)...........................................................2, 4, 5, 6, 7, 12, 13, 14, 16, 23

*Williamson v. UNUM Life Ins. Co.*,
   160 F.3d 1247 (9th Cir. 1998) ...............................................................................19

*Wise v. Verizon Commc'ns, Inc.*,
   600 F.3d 1180 (9th Cir. 2010) ...............................................................................22

*Wit v. United Behav. Health*,
   79 F.4th 1068 (9th Cir. 2023) ...................................................................5, 11, 13, 17

*Wolfe v. McDonough*,
   28 F.4th 1348 (Fed. Cir. 2022) ..............................................................................17

### STATUTES

9 U.S.C. § 10(a)-(b) .............................................................................................18

iv

**TABLE OF AUTHORITIES**

*(continued)*

Page(s)

9 U.S.C. § 11 ..........................................................................................................18

29 U.S.C. § 1109(a) .......................................................................................7, 21, 24

29 U.S.C. § 1132(a)(1)(B) .....................................................................................1, 4, 5

29 U.S.C. § 1132(a)(2) .........................................................................2, 7, 20, 23

29 U.S.C. § 1132(a)(3) .............................................................................................6, 15

29 U.S.C. § 1132(a)(5) .................................................................................1, 6, 15, 17

29 U.S.C. § 1133 .....................................................................................................12

42 U.S.C. § 405(g) ...................................................................................................18

**OTHER AUTHORITIES**

Healthcare Fraud Prevention P'ship, *Examining Clinical Laboratory Services*
    (May 2018), https://tinyurl.com/nj3frem5 ...................................................17

**REGULATIONS**

29 C.F.R. § 2560.503-1(a) ......................................................................................12

29 C.F.R. § 2560.503-1(*l*) .....................................................................................4, 12

29 C.F.R. § 2590.715-2719(a) ................................................................................12

29 C.F.R. § 2590.715-2719(b)(2)(ii)(F) ...............................................................4, 12

## INTRODUCTION

The Acting Secretary of Labor has sued UMR, Inc., a third-party administrator of self-funded employee health benefits plans, under the Employment Retirement Income Security Act ("ERISA"). The suit challenges UMR's denials of healthcare benefits claims for certain emergency room services and urinary drug screenings from January 1, 2015 to the present. The complaint asserts both: (1) backward-looking claims, seeking an order requiring UMR to readjudicate the claims at issue; and (2) forward-looking claims seeking to compel UMR to reform its procedures for processing both types of claims and to refrain from violating ERISA. Compl. at 17. At this time, UMR seeks dismissal of only the claims for retrospective relief. The Acting Secretary's claims for prospective relief can be addressed at a later stage of this case or potentially resolved through settlement if the retrospective claims are dismissed.

With respect to the backward-looking claims, the sole question presented in this motion is whether the Acting Secretary has a cause of action to challenge UMR's benefit determinations *en masse* and obtain retrospective "relief" (readjudication) on behalf of absent participants and beneficiaries. The answer is no. Congress provided a specific cause of action—§ 502(a)(1)(B) of ERISA—for challenges to denials of benefits, including allegations of fiduciary breach or other wrongful conduct related to those denials. *See* 29 U.S.C. § 1132(a)(1)(B). That cause of action belongs to *participants and beneficiaries* alone, not the Secretary of Labor.

Rather than leave these claims to the participants and beneficiaries to whom Congress provided the only relevant cause of action, the complaint invokes two inapposite causes of action that authorize the Secretary of Labor to seek different relief for violations of ERISA. Neither of those provisions permits the retrospective claims here.

The complaint first invokes § 502(a)(5), which authorizes the Secretary of Labor "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(5). The Supreme Court has explained

1

that § 502(a)(5) is a "safety net" that "offer[s] appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Interpreting the same language in a sister provision—§ 502(a)(3)—the Supreme Court, the Seventh Circuit, and this Court have all held that a claim necessarily fails if adequate relief is available to participants and beneficiaries under § 502(a)(1)(B). *Id.*; *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009); *Berceanu v. UMR, Inc.*, No. 19-cv-568, 2021 WL 5918667, at *2-3 (W.D. Wis. Dec. 15, 2021) (Conley, J.). Because § 502(a)(5), like § 502(a)(3), is similarly limited, the same rule necessarily applies to the Secretary of Labor's cause of action under § 502(a)(5), as another district court recently recognized. *See Sec'y of Lab. v. Macy's, Inc.*¸ No. 17-cv-541, 2021 WL 5359769, at *10-12 (S.D. Ohio Nov. 17, 2021).

Any other conclusion would nullify Congress's choice to restrict § 502(a)(1)(B) claims to participants and beneficiaries, provide an end run on the longstanding, important limitations applicable to those claims, and contravene the fundamental principle of equity that equitable relief is inappropriate where an adequate remedy exists at law. It also would allow forced readjudication of benefits claims on behalf of participants and beneficiaries who have not expressed any interest in suing anyone—and may stand to gain nothing from any lawsuit (*e.g.*, because they were never billed for the services at issue). Moreover, allowing the Acting Secretary to obtain "readjudication" of claims under § 502(a)(5) would violate the Supreme Court's precedent limiting relief under § 502(a)(5) to remedies "'that were *typically* available in equity,'" *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citation omitted), because "readjudication" is not a traditional equitable remedy.

The Acting Secretary also invokes § 502(a)(2), which authorizes the Secretary of Labor to seek "appropriate relief" under § 409. 29 U.S.C. § 1132(a)(2). The Supreme Court has made

crystal clear, however, that §§ 409 and 502(a)(2) do not "authorize any relief except for the plan itself." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985). And it is plain from the face of the complaint that any remedy here would flow directly to participants and beneficiaries, not to any plan. The complaint does not allege any injury to any plan, and the order sought here could only *increase* costs to the plans UMR administers, because the plans are self-funded and thus ultimately responsible for any payment that might be due under the plan. Finally, relief under § 502(a)(2) is also "[in]appropriate," just as it is under § 502(a)(5), because an available remedy exists under Section 502(a)(1)(B), as described above.

For these reasons, UMR's partial motion to dismiss should be granted.

## BACKGROUND

### I.   ERISA's Statutory Framework

ERISA is "a 'comprehensive and reticulated statute,'" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (citation omitted), that "controls the administration of [employee] benefit plans" through a wide range of substantive and remedial provisions, *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 651 (1995). ERISA's substantive provisions range from "reporting and disclosure mandates" to "participation and vesting requirements, funding standards, and fiduciary responsibilities for plan administrators." *Id.* (citations omitted).

To enforce these varied substantive requirements, ERISA establishes an "interlocking, interrelated, and interdependent remedial scheme" reflected in "six carefully integrated civil enforcement provisions"—"found in § 502(a) of the statute," *Russell*, 473 U.S. at 146—that reflect a "'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans," *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004) (citation omitted). Each provision specifies the "parties" that may seek relief, the "violation[s]" for which relief may be sought, and the "class of relief available." *Russell*, 473 U.S.

3

at 140-42 (emphasis omitted).  Beyond those "limited remedies," *Davila*, 542 U.S. at 215, the Supreme Court has mandated "a cautious approach to inferring remedies not expressly authorized by the text," *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000).

Several provisions of § 502(a) are relevant here:

**Section 502(a)(1)(B)** is the relevant remedial provision for claims alleging that a third-party administrator "violated ERISA by denying" claims for benefits under an ERISA plan. Compl. ¶¶ 5-6.  It authorizes claims by a "participant or beneficiary" to: (1) "recover benefits due to him under the terms of his plan"; (2) "enforce his rights under the terms of the plan"; or (3) "clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B). That language self-evidently includes any suit "complaining of a denial of coverage for medical care" pursuant to "an ERISA-regulated employee benefit plan."  *Davila*, 542 U.S. at 210.  Indeed, a claim challenging a denial of benefits under an ERISA plan "is a classic § 502(a)(1)(B) claim." *Burns v. Orthotek Inc. Emps. Pension Plan & Tr.*, No. 08-cv-190, 2009 WL 631245, at *3 (N.D. Ind. Mar. 11, 2009).

This provision provides the remedies for claims challenging claims denials, regardless of the basis underlying the challenge.  For example, § 502(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims." *Varity*, 516 U.S. at 512.  It likewise provides relief in the context of statutory violations where "liability would exist . . . only because of [defendant's] administration of ERISA-regulated benefit plans," *Davila*, 542 U.S. at 213, as well as violations of the Department of Labor's claims procedures, 29 C.F.R. §§ 2560.503-1(*l*), 2590.715-2719(b)(2)(ii)(F); and other "procedural failures or irregularities in the administrative review process," *Greer v. Operating Eng'rs Loc. 324 Pension Fund*, No. 17-cv-11832, 2017 WL 3891785, at *3 (E.D. Mich. Sept. 6, 2017).

When a plan grants its claims administrator "discretionary authority" to determine eligibility for benefits, as the Acting Secretary alleges the relevant plans did here, Compl. ¶ 22, the "most common" outcome of a successful § 502(a)(1)(B) claim is a "remand" to the claims administrator "for a fresh administrative decision," *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 778 (7th Cir. 2010).  That step is sometimes referred to as "reprocessing," *e.g.*, *Wit v. United Behav. Health*, 79 F.4th 1068, 1084-85 (9th Cir. 2023), or "readjudicat[ion]"—the term used by the Acting Secretary here, Compl. at 17.

The Acting Secretary has not asserted a claim under § 502(a)(1)(B), and cannot do so, because relief under this provision is available only to a plan "participant or beneficiary," 29 U.S.C. § 1132(a)(1)(B).  The statute is clear that others—including those like plan "fiduciaries" that may have other remedies under § 502(a)—"have no cause of action under section 502(a)(1)(B)," *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714 (4th Cir. 1996).  Relief under this provision is also subject to the constraints and limitations imposed by the plan, including "contractual limitations provisions," *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013), and the requirement that participants or beneficiaries first "exhaust administrative remedies" provided by their plans before bringing suit, *Orr v. Assurant Emp. Benefits*, 786 F.3d 596, 602 (7th Cir. 2015).

The Acting Secretary has not asserted a claim under **§ 502(a)(3)**, but its text and structure are highly relevant to the provisions invoked by the Acting Secretary, as explained below.  For "violations that § 502 does not elsewhere adequately remedy," § 502(a)(3) provides an alternative "catchall" remedy.  *Varity*, 516 U.S. at 512.  It permits a suit "by a participant, beneficiary, or fiduciary"—not the Acting Secretary—"(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief

(i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  Relief under this provision is limited in two ways.  *First*, "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un*available under subsection (a)(3)," *Mondry*, 557 F.3d at 805, because there would be "no need for further equitable relief, in which case such relief normally would not be 'appropriate,'" *Varity*, 516 U.S. at 515. *Second*, the Supreme Court has construed § 502(a)(3) to authorize only "'those categories of relief that were *typically* available in equity.'"  *Great-W.*, 534 U.S. at 210 (citation omitted).

**Section 502(a)(5)**, on which the Acting Secretary relies, provides "'catchall'" relief that is nearly identical to § 502(a)(3), so it shares some of the same limitations.  *Varity*, 516 U.S. at 512. Like the specified private parties under § 502(a)(3), the Secretary may bring suit under § 502(a)(5) "(A) to enjoin any act or practice which violates any provision of [ERISA], or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of [ERISA]."  29 U.S.C. § 1132(a)(5).  That language closely mirrors § 502(a)(3), except that the Secretary is limited to enforcing and seeking redress for violations of ERISA itself ("this subchapter"), and lacks any equivalent authority to enforce "the terms of the plan."  *Id.* § 1132(a)(3), (5).  Otherwise, the Supreme Court has instructed that the "language used in" § 502(a)(5) has "the same meaning as the same language" in § 502(a)(3).  *Mertens*, 508 U.S. at 260.  The limitations on § 502(a)(3) thus apply equally to § 502(a)(5):  (1) It is designed for "violations that § 502 does not elsewhere adequately remedy," *Varity*, 516 U.S. at 515, so it does not apply where plan participants and beneficiaries "have an adequate remedy . . . under § [502](a)(1)(B)," *Macy's,* 2021 WL 5359769, at \*4, \*10-12; and (2) the Secretary can obtain "only those types of relief that were typically available in equity," *Reich v. Lancaster*, 843 F. Supp. 194, 203 (N.D. Tex. 1993).

6

The Acting Secretary also invokes **Sections 409(a) and 502(a)(2)**, which operate in conjunction to provide an additional remedy for certain breaches of fiduciary duty.  Section 409(a) provides that an ERISA fiduciary who breaches a fiduciary duty: (1) "shall be personally liable to make good *to such plan* any *losses to the plan* resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary"; and (2) "shall be subject to such other equitable or remedial relief as the court may deem appropriate."  29 U.S.C. § 1109(a) (emphases added).  Because § 409 does not itself create a civil enforcement mechanism, *Russell*, 473 U.S. at 139-40, § 502(a)(2) authorizes a civil action by "the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under [§ 409]," 29 U.S.C. § 1132(a)(2).  Importantly, this provision authorizes relief only for losses to "the plan itself," *Russell*, 473 U.S. at 143-44, and § 502(a)(2) "'does not provide a remedy for individual beneficiaries,'" *Smith v. Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 282 (7th Cir. 2011) (quoting *Varity*, 516 U.S. at 515).  Although the Acting Secretary is permitted to sue under this provision, therefore, it can be used only to remedy losses to the plan—not losses to plan participants or beneficiaries.

## II.    The Complaint Challenging UMR's Benefits Determinations

The complaint relies on an expansive interpretation of §§ 502(a)(5) and (a)(2) to challenge *en masse* thousands of individual benefit determinations and obtain an order—remand to a claims administrator—that is available only to individual plan participants and beneficiaries under § 502(a)(1)(B) and only when it has been shown that a particular error in the adjudication of the claim could have prejudiced the decision to deny benefits.

UMR is a third-party administrator that services self-funded employee benefit plans.  Compl. ¶ 12.  A self-funded plan is one in which the employer, rather than an insurance company, assumes the financial risk for providing health care benefits to its employees, and ultimately pays

the cost of any benefits approved.  *Id*. ¶ 16.  Because administering a self-funded plan is onerous, an employer who has opted to self-fund its benefit plan will often contract with a third-party administrator, like UMR, to administer employees' claims and to provide additional services, such as processing appeals of denied claims as well as fraud and abuse management.  *See id*. ¶ 14.

The complaint alleges that UMR failed to properly adjudicate two types of claims for certain self-funded plans:  (1) claims regarding certain emergency services ("ER Claims"); and (2) claims related to urinary drug screening ("UDS Claims").

Count I of the complaint concerns the ER Claims.  It alleges that for an unspecified time period, UMR improperly denied ER Claims as not truly involving emergency medical situations based on diagnosis code alone, purportedly violating a statutory standard for evaluating such claims under ERISA, as well as ERISA's requirements that a plan fiduciary act in accordance with plan documents and with prudence.  *See id*. ¶¶ 5, 43-47, 51.  The complaint also alleges that UMR's administration of those claims ran afoul of claims procedures regulations by failing to provide participants and beneficiaries with a sufficient explanation for the denials and how to appeal the denials.  *See id*. ¶¶ 34-41, 51.

Count II concerns the UDS Claims.  It alleges that UMR denied all UDS claims as not medically necessary between August 2015 and August 2018 and "all UDS Claims that were not from either an emergency room or urgent care center" from August 2018 to the present.  *Id*. ¶¶ 54-60.  The complaint also alleges that UMR failed to act and in accordance with plan documents and with the requisite prudence and that UMR violated regulations regarding claims procedures by failing to provide participants and beneficiaries with a sufficient explanation for why their claims were denied.  *See id*. ¶¶ 65-72.[1]

---

[1]   The complaint further alleges that UMR violated the "prudent layperson" standard.  *See* Compl. ¶ 72.  However, the complaint never explains how this standard for determining whether

The complaint seeks both forward- and backward-looking relief under §§ 502(a)(5) and (a)(2).  The prospective claims ask the Court to enter an order "[r]equiring UMR to reform its procedures for receiving, processing, and adjudicating ER Claims and UDS Claims to comply with ERISA" and "[e]njoining UMR from committing future violations of ERISA."  Compl. at 17.  UMR is not seeking dismissal of those claims for prospective relief at this time.  The Acting Secretary's retrospective claims seek an order "[r]equiring UMR to readjudicate all ER Claims and UDS Claims that were denied or partially denied from January 1, 2015, to present, in compliance with ERISA."  *Id.*  That is, the complaint asks the Court to "grant . . . a remand for further review" of the ER and UDS Claims, the exact relief that participants and beneficiaries could receive under § 502(a)(1)(B).  *Kaiser v. Wis. Energy Conservation Corp.*, No. 14-cv-762, 2015 WL 3397548, at *2 (W.D. Wis. May 26, 2015) (Conley, J.).

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain facts sufficient to state a claim as a matter of law."  *Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir. 2002).  Although the court accepts as true all well-pleaded factual allegations, if the facts as alleged fail to state a cause of action as a matter of law, "no discovery or further development of the record" will salvage the plaintiff's legal claims, and dismissal on the pleadings is appropriate.  *Berger v. NCAA*, 843 F.3d 285, 294 (7th Cir. 2016); *see also Johnson v. Bankers Life & Cas. Co.*, 973 F. Supp. 2d 950, 956 (W.D. Wis. 2013) (Conley, J.) (granting motion to dismiss where "plaintiffs' allegations fail as a matter of law").  Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), irrespective of whether such conclusions are "couched as . . . factual

---

emergency room claims involve true emergencies is relevant to UMR's denial of UDS claims as not medically necessary.

allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Dismissal is thus appropriate where "ERISA does not provide" an applicable "cause of action."  *Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 826 (7th Cir. 2014).

## ARGUMENT

UMR seeks dismissal of only the complaint's retrospective claims at this time.  ERISA provides for the retrospective remedy the complaint seeks—a remand to the claims administrator to readjudicate a denial of benefits—under § 502(a)(1)(B), which governs challenges to "denial[s] of coverage," *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).  But relief under § 502(a)(1)(B) is available only to participants and beneficiaries, and readjudication is not available even to participants and beneficiaries unless they first establish in a § 502(a)(1)(B) action that the original benefit decision was erroneous in some specific way and prejudicial to the benefits determination.  The Acting Secretary's attempt to pursue these claims *en masse* and in the abstract through other provisions lacks merit, as neither of the provisions the complaint invokes— §§ 502(a)(5) and (a)(2)—provides a vehicle to challenge benefit determinations and obtain sweeping remands for readjudication.  This Court should therefore dismiss the claims for retrospective relief.

## I.   The Court Should Dismiss The Claims For Retrospective Relief Under § 502(a)(5)

The complaint first invokes § 502(a)(5), which authorizes the Secretary to seek "*appropriate* equitable relief" to redress ERISA violations.  As described above, § 502(a)(5) contains the same language as § 502(a)(3), and is therefore subject to the same limitations:  (1) it is unavailable where § 502(a)(1)(B) provides an adequate remedy; and (2) it authorizes only those categories of relief that were traditionally available in equity.  *See supra* 5-6.  Both limitations foreclose the Acting Secretary's retrospective claims here because readjudication is both fully

available to plan participants and beneficiaries under § 502(a)(1)(B), and distinct from any traditionally available equitable remedy.

### A.  Equitable Relief Is Unavailable Because § 502(a)(1)(B) Provides An Adequate Remedy

**1.**      It is beyond dispute that § 502(a)(1)(B) provides a remedy for each of the purported violations the complaint alleges.  The essence of the complaint is the allegation that UMR "violated ERISA by denying" claims for benefits under various ERISA plans.  Compl. ¶¶ 5-6.  Claims "complaining of a denial of coverage" squarely "fal[l] 'within the scope of' ERISA § 502(a)(1)(B)," *Davila*, 542 U.S. at 210 (citation omitted), and are routinely litigated under that provision, *e.g.*, *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 761 (7th Cir. 2010); *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 473 (7th Cir. 1998); *Wit v. United Behav. Health*, 79 F.4th 1068, 1076 (9th Cir. 2023).  Indeed, they are "classic § 502(a)(1)(B) claim[s]."  *Burns v. Orthotek Inc. Emps. Pension Plan & Tr.*, No. 08-cv-190, 2009 WL 631245, at *3 (N.D. Ind. Mar. 11, 2009).

The claims here are mill-run § 502(a)(1)(B) claims.  Courts have held that the specific types of denials alleged by the complaint may be remedied under § 502(a)(1)(B).  *E.g.*, *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005) (denial of emergency room claims); *Berceanu v. UMR, Inc.*, No. 19-cv-568, 2021 WL 5918667 (W.D. Wis. Dec. 15, 2021) (Conley, J.) (challenge to medical necessity determinations); *Univ. of Wis. Hosp. & Clinics, Inc. v. Kraft Foods Glob., Inc. Grp. Benefits Plan*, 28 F. Supp. 3d 833, 842 (W.D. Wis. 2014) (same).  And the specific types of violations alleged also are each remediable through § 502(a)(1)(B).  For example, the Acting Secretary alleges that UMR violated its fiduciary duties to act with prudence and to adhere to plan terms.  Compl. ¶¶ 51(a)-(b), 72(a)-(b).  As the Supreme Court has explained, § 502(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of

plan documents and the payment of claims." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Alleging a fiduciary breach "does not alter the fact that [plaintiffs are] seeking medical benefits which [they] clai[m] are owed." *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714 (4th Cir. 1996). The Acting Secretary also alleges UMR denied benefits in violation of certain statutory requirements. Compl. ¶¶ 51(c), 72(c). Similar statutory claims may also proceed under § 502(a)(1)(B). *E.g.*, *Craft v. Health Care Serv. Corp.*, No. 14-cv-5853, 2016 WL 1270433, at *12 (N.D. Ill. Mar. 31, 2016).

The same is true for the Acting Secretary's allegations of violations of the Department's claims procedure regulations. *See* Compl. ¶¶ 51(d), 72(d). Those procedures apply to "claim[s] for benefits." 29 U.S.C. § 1133; 29 C.F.R. §§ 2560.503-1(a), 2590.715-2719(a). And the remedy for any violations of these regulations also lies in § 502(a)(1)(B). "[A] failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy." *Greer v. Operating Eng'rs Loc. 324 Pension Fund*, No. 17-cv-11832, 2017 WL 3891785, at *3 (E.D. Mich. Sept. 6, 2017). Rather, violations of these regulations may excuse a participant from exhausting administrative remedies prior to filing a claim for benefits in court, or they might allow for remand of a denial in some circumstances. *See* 29 C.F.R. §§ 2560.503-1(*l*), 2590.715-2719(b)(2)(ii)(F). As a result, "arguments of procedural failures or irregularities in the administrative review process may be raised in the context of an ERISA § 502(a)(1)(B) claim." *Greer*, 2017 WL 3891785, at *3.

As further confirmation that § 502(a)(1)(B) provides an adequate remedy, the specific "[o]rder" the complaint seeks—"[r]equiring UMR to readjudicate all ER Claims and UDS Claims" denied during the relevant period, Compl. at 17—is commonplace under § 502(a)(1)(B). Indeed, "remand for a fresh administrative decision" is the "most common" outcome under § 502(a)(1)(B)

when a court finds an abuse of discretion in denying benefits. *Holmstrom*, 615 F.3d at 778; *see also, e.g.*, *Berceanu*, 2021 WL 5918667, at *2-3; *Kaiser v. Wis. Energy Conservation Corp.*, No. 14-cv-762, 2015 WL 3397548, at *2 (W.D. Wis. May 26, 2015) (Conley, J.).

    **2.**    The provision invoked by the Acting Secretary, § 502(a)(5), applies only to "violations that § 502 does not elsewhere adequately remedy," *Varity*, 516 U.S. at 512, 515. Because plan participants and beneficiaries "have an adequate remedy . . . under § [502](a)(1)(B)," the complaint's claims for "backward-looking relief . . . d[o] not fall within . . . § [502](a)(5)." *Sec'y of Lab. v. Macy's, Inc.*, No. 17-cv-541, 2021 WL 5359769, at *4, *10-12 (S.D. Ohio Nov. 17, 2021).

    The Seventh Circuit has already applied this rule to § 502(a)(3), holding "that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un*available under subsection (a)(3)." *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) (citing *Varity*, 557 U.S. at 515). "[A] denial of benefits, without more," thus "does not constitute a breach of fiduciary duty that can be remedied under the equitable-relief provision" because "that's what section [502](a)(1)(B) is for." *Sumpter v. Metro. Life Ins. Co.*, 683 F. App'x 519, 521 (7th Cir. 2017) (per curiam). This Court and others regularly apply this rule to foreclose claims for readjudication of denied claims under § 502(a)(3). *E.g.*, *Berceanu*, 2021 WL 5918667, at *3; *see also, e.g.*, *Wit*, 79 F.4th at 1086 (holding that "district court . . . abused its discretion by concluding that the reprocessing remedy could arise under § [502](a)(3)"); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 14-cv-2139, 2016 WL 6601662, at *11 (C.D. Cal. Feb. 3, 2016) (dismissing § 502(a)(3) claim requesting readjudication of benefits determination because such relief must be sought "through the operation of § 502(a)(1)(B)").

The same rule applies to § 502(a)(5). Section 502(a)(5) "authorizes relief in actions by the Secretary on the same terms ('appropriate equitable relief') as in the private-party actions authorized by § 502(a)(3)," so that language must have "the same meaning as the same language" in § 502(a)(3). *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260 (1993); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (describing the "'normal rule of statutory construction' that 'identical words used in different parts of the same act are intended to have the same meaning'" (citation omitted)). Because remand for readjudication is not "'appropriate' equitable relief" under § 502(a)(3), it is not "'appropriate' equitable relief" under § 502(a)(5) either. *Varity*, 516 U.S. at 515.

A remedy under § 502(a)(1)(B) is not inadequate just because it is unavailable to the Secretary; rather, that limitation merely reflects a conscious decision by Congress to limit which plaintiffs can sue for benefits under ERISA. "While it is true that the Secretary lacks the power to bring a claim for wrongful denial of benefits, the Plan participants can." *Macy's*, 2021 WL 5359769, at *11. *Macy's* thus rejected a similar § 502(a)(5) claim seeking "backward-looking re-calculation of certain benefit decisions," reasoning that "the sole remedy" for "a claim seeking wrongly denied benefits" is "an action under [§ 502](a)(1)(b)," so "such relief would not fall within § [502](a)(3), and thus does not fall within the same language in § [502](a)(5)." *Id.* at *10-11. Similarly, in *Coyne*, the Fourth Circuit rejected a § 502(a)(3) claim by a plan sponsor that its third-party administrator "violated its fiduciary duties by unreasonably denying [a participant] benefits." 102 F.3d at 713. Far from supporting relief under § 502(a)(3), the fact that "fiduciaries" like the plan sponsor "have no cause of action under section 502(a)(1)(B)" cut the other way: To allow plan fiduciaries to challenge benefit determinations under § 502(a)(3) "would render meaningless the omission of fiduciaries in section 502(a)(1)(B)." *Id.* at 714-15. So too here—the

14

challenge to UMR's benefits determinations "cannot be 'appropriate' relief" under § 502(a)(5) "when Congress denied [the Secretary] that very remedy under the specific terms of section 502(a)(1)(B)." *Id.* at 716.

Any other conclusion would run counter to the Supreme Court's instruction to employ "a cautious approach to inferring remedies not expressly authorized by the text." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000). "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). This "warning" is "particularly relevant" where, as here, "Congress has addressed both the specific remedy at issue and the precise question of who is entitled to pursue that remedy." *Coyne*, 102 F.3d at 715.

If anything, the argument for permitting challenges to benefits determinations under § 502(a)(5) is even weaker than under § 502(a)(3). Congress deliberately omitted from § 502(a)(5) the language of § 502(a)(3) that also permits claims by a plan "participant, beneficiary, or fiduciary . . . to enforce . . . the terms of the plan" or to "enjoin . . . violations" thereof. 29 U.S.C. § 1132(a)(3). Congress thus made clear that the Secretary has no role in enforcing the *plan*, and instead merely shares the other entities' power to seek relief for violations of ERISA ("this subchapter") itself. *Id.* § 1132(a)(5). Because the claims here turn on the plans' coverage of "Emergency Services" or "Emergency Room" and limitation on coverage to "Medically Necessary" services, Compl. ¶¶ 26, 54, they rely on the plans themselves and fall squarely outside § 502(a)(5).

Interpreting § 502(a)(5) to permit relief that is available under § 502(a)(1)(B) would also contravene the "basic doctrine of equity jurisprudence that courts of equity should not act" where

there is "an adequate remedy at law" and "irreparable injury" will not result if equitable relief is not provided.  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (quotation marks omitted).  "[I]t is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief."  *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75-76 (1992).  Thus, "where Congress elsewhere provided adequate relief for a beneficiary's injury"—as it has done here as under § 502(a)(1)(B)—there is "no need for further equitable relief," and such relief cannot be considered "'appropriate.'"  *Varity*, 516 U.S. at 515.

Further, "recast[ing]" a § 502(a)(1)(B) claim as a § 502(a)(5) claim would undermine Congress's careful remedial scheme by allowing the Secretary to "circumvent safeguards for plan administrators that have developed under § 502(a)(1)(B)."  *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 258 (2008) (Roberts, C.J., concurring in part and concurring in the judgment).  For example, plan participants must first "exhaust administrative remedies," which may be "excused" only in a "few limited circumstances."  *Orr v. Assurant Emp. Benefits*, 786 F.3d 596, 602 (7th Cir. 2015).  Further, § 502(a)(1)(B) claims must be brought within the limitations periods set by the plan, which may be shorter than would otherwise apply.  *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 110 (2013).  Allowing any party—whether a participant, beneficiary, fiduciary, or the Secretary of Labor—to avoid those safeguards would undermine ERISA's reticulated remedial scheme and risk reviving claims that have otherwise become final.

Ultimately, participants and beneficiaries are better positioned than other parties to judge whether seeking relief under § 502(a)(1)(B)—including seeking a remand for readjudication—will actually serve their interests.  The value to many participants and beneficiaries from the retrospective relief sought here is far from a foregone conclusion because the Acting Secretary has not alleged (and cannot allege) whether plan participants and beneficiaries were billed for (or paid

16

anything out of pocket for) the services at issue.  *See, e.g.*, *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 453 (D.N.J. 2009) (denying class certification based in part on variations in patient billing for laboratory tests).  Nor has the Acting Secretary alleged what impact any readjudication would have on participants' copayments, coinsurance, or deductibles—*i.e.*, whether the participants' overall liabilities would go up or down if the Acting Secretary were successful.  *See generally Wolfe v. McDonough*, 28 F.4th 1348, 1352 (Fed. Cir. 2022) (describing copayments, coinsurance, and deductibles).[2]  In short, Congress's decision to limit denial-of-benefits claims to participants and beneficiaries under § 502(a)(1)(B) makes perfect sense, as only these categories of potential plaintiffs—and not the Acting Secretary—are positioned to evaluate and vindicate these interests.

### B.   Readjudication Is Unavailable Because It Is Not A Traditional Equitable Remedy

Readjudication also is not an "appropriate equitable" remedy under § 502(a)(5), 29 U.S.C. § 1132(a)(5), because it is not a traditional equitable remedy.  The Supreme Court has limited "appropriate equitable relief" under § 502(a) to "'categories of relief that were *typically* available in equity.'"  *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citation omitted).  That is, the remedy must be one that was available in a "typical" equity case before law and equity were merged; "'trust remedies,'" by contrast, are "'inapposite' because they were *special* to trust cases, not *typical* of cases brought in equity more broadly."  *Rose v. PSA Airlines, Inc.*, No. 21-2207, 2023 WL 5839282, at *8 (4th Cir. 2023) (quoting *Great-W.*, 534 U.S. at 219).  But there is no "precedent showing how reprocessing constitutes relief that was typically available in equity."  *Wit*, 79 F.4th at 1086.

---

[2]   It is also unclear how the Acting Secretary would address any allegations of fraud that commonly arise in connection with these services.  *See, e.g.*, Healthcare Fraud Prevention P'ship, *Examining Clinical Laboratory Services* (May 2018), https://tinyurl.com/nj3frem5.

Rather than deriving from equity, readjudication most closely resembles a remand authorized by statute. The Seventh Circuit has explained that a "remand" to an ERISA third-party administrator is "functionally identical to" "remands" of disability benefits determinations to the Social Security Administration and also analogous to "arbitration remands," which are "treated just like remands to administrative agencies." *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 978-80 (7th Cir. 1999). These remands traditionally are creatures of statute, not of equity. The Social Security Act expressly authorizes courts to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). And the Federal Arbitration Act authorizes courts to "make an order vacating the award," including "direct[ing] a rehearing," 9 U.S.C. § 10(a)-(b), and to "make an order modifying or correcting the award," *id.* § 11. Where an ERISA plan "grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan," courts have sought to preserve that discretion by reading that same remand authority into § 502(a)(1)(B). *Holmstrom*, 615 F.3d at 766, 778. But they have done so by analogy to statutory procedures, not equity.

In fact, although the Seventh Circuit has at times referred to "remand" as a "remedy," it actually is not a remedy in and of itself. In considering the member's right to benefits, courts may "remand" so that the administrator can decide an issue "in the first instance," *Saffle v. Sierra Pac. Power Co.*, 85 F.3d 455, 460 (9th Cir. 1996), to preserve the discretion that plans are permitted to grant to their administrators, *see Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). But this is only a step in "determin[ing] whether [Plaintiffs are] entitled to benefits," *Saffle*, 85 F.3d at 457, not an end in itself, just like a remand to an agency is a step toward final resolution of

18

a claim for social security benefits or enforcement of an arbitral award.  *See Williamson v. UNUM Life Ins. Co.*, 160 F.3d 1247, 1251 (9th Cir. 1998).

To be sure, this Court and others have sometimes characterized an order directing a plan administrator to readjudicate a claim as an "injunction."  *See Berceanu*, 2021 WL 5918667, at *3.  But Seventh Circuit precedent shows that readjudication is not an injunction in the traditional, equitable sense.  A core issue in *Perlman* was whether "ERISA remands" issued by district courts are appealable to the court of appeals.  195 F.3d at 977-80.  The Seventh Circuit concluded that some remands are "final decision[s]" appealable under 28 U.S.C. § 1291, and that some are not final and may not be appealed as of right.  *Id.* at 978-80.  But if remands are injunctions, they would all be immediately appealable either as final decisions under 28 U.S.C. § 1291 or as interlocutory injunctions under 28 U.S.C. § 1292(a)(1).  Readjudication thus cannot be an injunction.  *Cf. Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892-93 (7th Cir. 2011) (noting that "[a]n injunction is not a final remedy if it would merely lay an evidentiary foundation for subsequent determinations of liability" and therefore holding that an injunction ordering insurer to reinspect roofs for hail damage was not an appropriate remedy for "underpayment of [plaintiffs'] insurance claims" because that harm "is easily remedied by an award of money damages, a fully adequate remedy"); *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 826 (7th Cir. 2011) (rejecting request for injunction that would require calculation of backpay for class because "[t]he monetary tail would be wagging the injunction dog").

Even if readjudication "perhaps could be characterized as a form of injunctive relief" because "the court is ordering the company to engage in particular conduct . . . in the future," it still would not qualify as a traditional "equitable remedy" because it is not a form of injunctive relief traditionally authorized before the merger of law and equity.  *Macy's*, 2021 WL 5359769, at

*11. At most, readjudication would merely operate as "an injunction to enforce a contractual obligation to pay money past due," *Chorosevic v. MetLife Choices*, No. 05-cv-2394, 2009 WL 723357, at *11 (E.D. Mo. Mar. 17, 2009), which the Supreme Court has held "was not typically available in equity," *Great-W.*, 534 U.S. at 210-11. "[A]s a matter of substance, such relief is really a form of damages (i.e., legal relief)"; if readjudication yields any value at all for the participant or beneficiary, it is "a dollar payment for a past wrong (i.e., the past wrongful denial of benefits)." *Macy's*, 2021 WL 5359769, at *11. That type of "monetary relief disguised as an injunction" is not an "appropriate equitable remedy" under ERISA. *Almont Ambulatory*, 2016 WL 6601662, at *11. It is therefore available only under § 502(a)(1)(B), not § 502(a)(5).

## II.     The Court Should Dismiss The Claims For Retrospective Relief Under § 502(a)(2)

Claims for readjudication fare no better under § 502(a)(2). That provision authorizes a claim by the Secretary of Labor or a plan participant, beneficiary, or fiduciary for "appropriate relief" under § 409. 29 U.S.C. § 1132(a)(2). But § 409 provides only for relief on behalf of *the plan*—not on behalf of participants or beneficiaries. Even if § 409 were not so limited, readjudication would not be "appropriate" under § 502(a)(2) for the same reasons that it is not "appropriate" under § 502(a)(5): Adequate relief is available under § 502(a)(1)(B), and remand to a private party for readjudication is not the type of traditional remedy contemplated by Congress.

### A.     Section 502(a)(2) Does Not Apply Because The Complaint Does Not Seek Relief On Behalf Of Any Plan

The complaint's reliance on § 502(a)(2) to seek relief under § 409 is squarely foreclosed by *Russell*, which held unambiguously that "Congress did not intend [§ 409] to authorize any relief except for the plan itself." 473 U.S. at 144. Because the Acting Secretary seeks relief for the benefit of plan participants and beneficiaries, not for "the plan itself," §§ 409 and 502(a)(2) are simply unavailable.

20

*Russell*'s holding follows inexorably from "the entire text of § 409." 473 U.S. at 144. Section 409(a) provides that a plan fiduciary who breaches its fiduciary duties: (1) "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary"; and (2) "shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a). The provision both identifies one "specific" remedy ("personal liability of the fiduciary" for losses and profits), and adds a "catchall" clause for "'other . . . appropriate'" relief. *Russell*, 473 U.S. at 140-42.

The "specific" remedy, in turn, is narrowly focused on "the relationship between the fiduciary and the plan as an entity." *Russell*, 473 U.S. at 141-42. It imposes liability only "'*to such plan*,'" and only for "'losses *to the plan*.'" *Id.* at 140 (quoting 29 U.S.C. § 1109(a)) (emphases added by *Russell*). It likewise provides for restoration of profits only "'*to such plan*,'" and only for profits from the "'use of assets *of the plan*.'" *Id.* (quoting 29 U.S.C. § 1109(a)) (emphases added by *Russell*). These limitations "mak[e] it abundantly clear that [§ 409's] draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142.

*Russell* recognizes that these limitations apply equally to § 409's catchall clause. An interpretation of that clause that "skip[s] over" the more specific provision "establishing remedies benefiting . . . solely the plan" would "divorce the phrase being construed from its context," improperly "construct an entirely new class of relief available to entities other than the plan," and "render superfluous the preceding clauses providing relief singularly to the plan." *Id.* at 141-42 (emphasis omitted). Section 409, including the catchall clause—and by extension, § 502(a)(2)— is thus limited to relief "for the plan itself." *Id.* at 144.

Applying *Russell*, the Seventh Circuit has held that a participant who sued a claims administrator for denying his claim did not have a cause of action under § 502(a)(2) because he sought "relief for injuries that *he*, rather than his plan, suffered" and because the participant was not "act[ing] as a representative of the plan." *Smith v. Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 282 (7th Cir. 2011). Other circuits likewise recognize that § 502(a)(2) "solely authoriz[es] remedies that inure to the benefit of the plan," *N.R. ex rel. S.R. v. Raytheon Co.*, 24 F.4th 740, 750 (1st Cir. 2022), and "bars plaintiffs from suing under Section 502(a)(2)" where they "see[k] damages on [participants' and beneficiaries'] own behalf, not on behalf of the [p]lan," *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993).[3]

*Russell* thus precludes the complaint's claims for readjudication under § 502(a)(2) because they seek relief for the allegedly affected participants and beneficiaries, not UMR's customer plans. Any benefit of readjudication—a second chance for participants and beneficiaries to potentially obtain plan coverage of their claims—would "inur[e]" exclusively to those participants and beneficiaries, not "to the benefit of the plan[s]." *Russell*, 473 U.S. at 140. The complaint is devoid of any allegation that any plan suffered any loss at all. *See Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (affirming dismissal of participant's § 502(a)(2) claim because participant "did not allege that the plan as a whole incurred an injury" and made "no factual allegations that the Plan Administrators violated their duties with respect to anything other

---

[3] The Acting Secretary may argue that the Supreme Court narrowed *Russell* in *LaRue*, 552 U.S. 248. But as this Court recognized in *Smith*, *LaRue* has no application to a "group health insurance plan" like the ones at issue here. 639 F.3d at 283. "*LaRue* simply holds that in the context of a defined contribution pension plan, in which there are individual accounts holding assets for each participant, malfeasance by a plan fiduciary that adversely affects the value of the assets held in such an account will support a suit under sections 409 and 502(a)(2) regardless of whether the wrongdoing affects one account or all accounts in the plan." *Id.* A "group health insurance plan," however, "is the kind of defined benefit plan that the Court dealt with in *Russell* (and distinguished in *LaRue*), and which typically holds no assets in trust for any individual participant." *Id.* "It is *Russell* rather than *LaRue* that controls here." *Id.*

than [participant's] individual claim").  If anything, reversing coverage denials would increase the costs to plans, because they are all self-funded and are therefore ultimately responsible for paying any claims that UMR approves.  Compl. ¶¶ 12, 30.  Because the Acting Secretary cannot allege any harm to plans, and the order sought would not benefit plans, the § 502(a)(2) claims must be dismissed.

**B.      Relief Is Also Unavailable For The Same Reasons Relief Is Unavailable For The Acting Secretary's Retrospective § 502(a)(5) Claims**

Even if *Russell* did not require dismissal of the claims for retrospective relief under § 502(a)(2), those claims would still fail for the same reasons that the complaint has failed to state a claim for retrospective relief under § 502(a)(5).

Like §§ 502(a)(3) and (a)(5), § 502(a)(2) provides that a civil action may be brought by the Secretary of Labor for "*appropriate* relief under [ERISA § 409]."  29 U.S.C. § 1132(a)(2) (emphasis added).  *Varity* holds that relief is not "appropriate" under § 502(a)(3) where "Congress elsewhere provided adequate relief for a beneficiary's injury."  516 U.S. at 515.  And as Chief Justice Roberts has explained, "[a]pplying th[at] same rationale to an interpretation of 'appropriate' in § 502(a)(2) would accord with our usual preference for construing the same terms to have the same meaning in different sections of the same statute, . . . and with the view that ERISA in particular is a comprehensive and reticulated statute with carefully integrated civil enforcement provisions."  *LaRue*, 552 U.S. at 258 (Roberts, C.J., concurring in part and concurring in the judgment) (quotation marks and alterations omitted).  Because Congress specifically provided only participants and beneficiaries with a cause of action to pursue claims for benefits, allowing such claims to be brought under Section 502(a)(2) would disrupt ERISA's carefully drawn remedial scheme.  *Coyne*, 102 F.3d at 715 (applying that rationale to both subsections (a)(2) and (a)(3)); *see also supra* 14-15.  "[I]f the availability of a denial of benefits remedy is enough to

make a § 502(a)(3) claim not 'appropriate,'" therefore, "the same should hold true for a § 502(a)(2) claim." *Burns*, 2009 WL 631245, at *4.

Similarly, if readjudication was not typically available in equity before the merger of law and equity, it is not "appropriate" "equitable . . . relief." *See supra* 17-20.  Section 409(a) also authorizes "appropriate" "remedial relief."   29 U.S.C. § 1109(a).   While "equitable" relief in ERISA may only take the form of remedies that were available in a "typical" equity case and not, for example, trust-law remedies, *see Rose*, 2023 WL 5839282, at *8, "remedial" expands the category of available relief, *see Mertens*, 508 U.S. at 258 & n.8.  In light of the Supreme Court's warning to construe ERISA's causes of action narrowly, § 409's use of "remedial" at best means that the provision authorizes "all relief available for breach of trust at common law."  *Id*. at 254, 258 (quotation marks omitted); *see also Harris Tr.*, 530 U.S. at 250 (analysis of ERISA often takes "[t]he common law of trusts" as a "starting point" (quotation marks omitted)).   Because readjudication is a statutory, not common law or traditional, remedy, *see supra* 18-19, it is not an "appropriate" form of "equitable or remedial relief" under § 502(a)(2).

## CONCLUSION

For the reasons set forth above, the Court should grant UMR's partial motion to dismiss.

DATE:   September 29, 2023                    Respectfully submitted,


                                              GEOFFREY M. SIGLER
                                              MATTHEW S. ROZEN
                                              ANDREW G.I. KILBERG
                                              GIBSON, DUNN & CRUTCHER LLP
                                              1050 Connecticut Ave. NW
                                              Washington, D.C. 20036
                                              Tel: (202) 955-8500
                                              gsigler@gibsondunn.com
                                              mrozen@gibsondunn.com
                                              akilberg@gibsondunn.com

                                              s/ Kevin M. St. John
                                              KEVIN M. ST. JOHN
                                              BELL GIFTOS ST. JOHN LLC
                                              5325 Wall Street, Suite 2200
                                              Madison, WI 53718
                                              Tel: (608) 216-7990
                                              kstjohn@bellgiftos.com

                                              *Counsel for Defendant UMR, Inc*

25