# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| **JULIE A. SU**, | ) | |
| Acting Secretary of Labor, | ) | |
| United States Department of Labor, | ) | Case No. 23-CV-00513-wmc |
| | ) | |
| Plaintiff, | ) | |
| | ) | District Judge William M. Conley |
| v. | ) | |
| | ) | |
| **UMR, INC.**, | ) | Magistrate Judge Stephen L. Crocker |
| | ) | |
| Defendant. | ) | |

## THE ACTING SECRETARY'S RESPONSE TO DEFENDANT
## UMR, INC.'S  MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN PART

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 1

   I.   Statutory Background ................................................................................. 2

      A.   ERISA's Fiduciary Requirements Under Section 404 ........................................ 2

      B.   ERISA's Requirements for Group Health Plans Under Section 715 ............... 4

      C.   ERISA's Procedural Requirements for Benefit Determinations Under Section 503   4

      D.   ERISA's Causes of Actions for Secretarial Enforcement Under Sections 502(a)(2) and (5) ......................................................................................... 7

   II.   Factual Background ................................................................................... 8

      A.   UMR's Policies for Adjudicating UDS and ER Claims Violate ERISA's Fiduciary Standards and Substantive Requirements for Welfare Plans ................. 8

      B.   UMR's Adverse Benefit Determinations Violate ERISA's Notice Requirements ................................................................................................. 9

      C.   The Acting Secretary Seeks Relief to Remedy UMR's ERISA Violations ....... 10

STANDARD OF REVIEW ................................................................................. 10

ARGUMENT .................................................................................................... 11

   I.   Summary of Argument ............................................................................ 11

   II.   Systematic Fiduciary Breaches in Administering Claims Are Actionable under ERISA section 502(a)(2) ............................................................................... 12

      A.   A Monetary Loss to an ERISA Plan Is Not Needed to State a Claim under Section 502(a)(2) to Redress Systematic Plan-Wide Breaches ............................. 12

      B.   Claims Readjudication Qualifies as Both Equitable and Remedial Relief Under Section 409 ........................................................................................ 17

      C.   Plan-wide Readjudication is "Plan-related" and Not Individualized ........... 24

   III.   If the Acting Secretary Cannot Obtain Relief Under Section 502(a)(2), Then It Must Be Available Under Section 502(a)(5) ................................................... 25

      A.   The Ability of Participants to Bring Claims for Benefits Under Section 502(a)(1)(B) Has No Bearing on Whether the Secretary Can Separately Bring Claims Under Section 502(a)(5) to Redress Plan-Wide ERISA Violations ............ 27

      B.   The Acting Secretary Seeks  Appropriate Equitable Relief ......................... 34

   IV.  Conclusion ........................................................................................... 34

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) .......................................................................... 5, 18, 24

*Am. Coll. of Emergency Physicians v. Blue Cross & Blue Shield of Ga.*,
833 F. App'x 235 (11th Cir. 2020)........................................................... 9

*Armijo v. ILWU-PMA Welfare Plan*,
No. 15-cv-01403, 2017 WL 10718576 (C.D. Cal. Aug. 1, 2017) ................. 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................ 10

*Bartucca v. Katy Indus., Inc.*,
Civ. No. N-87-133 (PCD), 1989 WL 225617 (D. Conn. Jul. 12, 1989) ....... 30

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................ 10

*Berceanu v. UMR, Inc.*,
No. 19-CV-568-WMC, 2023 WL 1927693 (W.D. Wis. Feb. 10, 2023) ....... 19

*Black & Decker Disability Plan v. Nord*,
538 U.S. 822, (2003) ............................................................................. 3

*Chesemore v. All. Holdings, Inc.*,
886 F. Supp. 2d 1007 (W.D. Wis. 2012).................................................. 3

*Chesemore v. All. Holdings, Inc.*,
948 F. Supp. 2d 928 (W.D. Wis. 2013) ................................................. 13

*Chesemore v. Fenkell*,
829 F.3d 803 (7th Cir. 2016)................................................................. 3

*CIGNA Corp. v. Amara.*,
563 U.S. 421 (2011) ............................................................................ 19

*Crista v. Wisc. Physicians Serv. Ins. Corp.*,
No. 18-CV-365-WMC, 2021 WL 3511092 (W.D. Wis. Aug. 10, 2021) ............. 3, 28

*Dominick's Finer Foods, LLC v. UFCW Unions & Emps. Midwest Pension Fund*,
390 F. Supp. 3d 939 (N.D. Ill. 2019) ................................................... 11

*Donovan v. Bierwirth*,
680 F.2d 263 ....................................................................................... 3

*Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of,*
Okla., 693 F.3d 1303 (10th Cir. 2012)................................................... 34

*Geinosky v. City of Chicago*,
675 F.3d 743 (7th Cir. 2012)................................................................ 11

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) ............................................................ 18, 19, 21, 22

*Gunn v. Cont'l Cas. Co.*,
  968 F.3d 802 (7th Cir. 2020).................................................................. 10

*Harzewski v. Guidant Corp.*,
  489 F.3d 799 (7th Cir. 2007)................................................................. 13

*Hawkins v. Cintas Corp.*,
  32 F.4th 625 (2022) ............................................................................ 25

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
  571 U.S. 99 (2013) ............................................................................... 3

*Herman v. S.C. Nat'l Bank*,
  140 F.3d 1413 (11th Cir. 1998) ........................................................... 32

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  865 F. Supp. 2d 1002 (C.D. Cal. 2011) ............................................... 16

*Keene Corp. v. United States*,
  508 U.S. 200 (1993)............................................................................ 34

*Killian v. Concert Health Plan*,
  742 F.3d 651 (7th Cir. 2013)................................................................. 3

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
  552 U.S. 248 (2008) ........................................................................... 26

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) ..................................................................... passim

*Mathews v. Chevron Corp.*,
  362 F.3d 1172 (9th Cir. 2004) .......................................................19, 20

*Mertens v. Hewitt Associates*,
  508 U.S. 248 (1993) ...............................................................17, 18, 23

*Metro. Life Ins. Co. v. Glenn*,
  554 U.S. 105 (2008) ........................................................................... 30

*Mondry v. Am. Fam. Mut. Ins. Co.*,
  557 F.3d 781 (7th Cir. 2009)............................................................... 26

*Nichol v. Pullman Standard*,
  889 F.2d 115 (7th Cir.1989) ............................................................... 15

*Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*,
  195 F.3d 975 (7th Cir. 1999)...........................................................23, 24

*Reich v. Continental Casualty Co.*,
  33 F.3d 754 (7th Cir. 1994)................................................................. 19

*Rochow v. Life Ins. Co. of N. Am.*,
  780 F.3d 364 (6th Cir. 2015) (en banc ................................................ 29

*Sec'y of Labor v. Fitzsimmons*,
  805 F.2d 682 (7th Cir. 1986)............................................................... 32

*Sec'y of Labor v. Macy's, Inc.*,
  No. 1:17-CV-541, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021) ............... 28

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
  547 U.S. 356 (2006) ........................................................................... 18

*Shapiro v. Aetna, Inc.,*
   No. 22-cv-1958, 2023 WL 4348601 (D.N.J., June 5, 2023) ........................... 19
*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.,*
   661 F. Supp. 2d 1076 (D. Ariz. 2009) ...................................................... 15
*Sumpter v. Metro. Life Ins. Co.,*
   683 F. App'x 519 (7th Cir. 2017) ............................................................ 29
*Tamayo v. Blagojevich,*
   526 F.3d 1074 (7th Cir. 2008) ............................................................... 11
*TRW Inc. v. Andrews,*
   534 U.S. 19 (2001) ............................................................................. 17
*United States v. Jumaev,*
   20 F.4th 518 (10th Cir. 2021) ................................................................ 33
*Varity Corp. v. Howe,*
   516 U.S. 489 (1996) ..................................................................... passim
*Wilmington Shipping Co. v. New England Life Ins. Co.,*
   496 F.3d 326 (4th Cir. 2007) ................................................................ 32
*Wit v. United Behavioral Health,*
   58 F.4th 1080 (9th Cir. 2023) ............................................................... 19

## Statutes

28 U.S.C. § 1292 .................................................................................... 24
28 U.S.C. §§ 1291 and 1292 ...................................................................... 23
29 U.S.C. § 1001(b) ................................................................................... 2
29 U.S.C. § 1104(a)(1)(B) ............................................................................ 3
29 U.S.C. § 1104(a)(1)(B), (D) ................................................................... 8, 9
29 U.S.C. § 1104(a)(1)(D) ............................................................................ 4
29 U.S.C. § 1109(a) ..................................................................... 7, 13, 14, 17
29 U.S.C. § 1132(a)(1)(B) ........................................................................ 27, 29
29 U.S.C. § 1132(a)(2) ...................................................................... 7, 12, 22
29 U.S.C. § 1132(a)(2), (5) ........................................................................... 2
29 U.S.C. § 1132(a)(5) ...................................................................... 8, 25, 34
29 U.S.C. § 1132(b) .................................................................................. 33
29 U.S.C. § 1133 ................................................................................... 9, 30
29 U.S.C. § 1145 ...................................................................................... 33
29 U.S.C. § 1185(d) .................................................................................... 9
29 U.S.C. § 1185d ...................................................................................... 4
29 U.S.C. §§ 1132, 1134-35 .......................................................................... 2
42 U.S.C. § 300gg ...................................................................................... 4
42 U.S.C. § 300gg-19a ............................................................................. 4, 9
Pub. L. No. 111-148, 124 Stat. 119 (2010) ......................................................... 4
Pub. L. No. 111-152, 124 Stat. 1029 (2010) ....................................................... 4

## Regulations

29 C.F.R. § 2560.503-1 .................................................................. 6, 10, 30
29 C.F.R. § 2560.503-1(a) ............................................................................ 5
29 C.F.R. § 2560.503-1(b) ............................................................................ 5
29 C.F.R. § 2560.503-1(m)(4) ...................................................................... 5
29 C.F.R. § 2560.503-1(g)(1) ........................................................................ 6
29 C.F.R. § 2590.715-2719(b) ............................................................... 6, 10
29 C.F.R. § 2590.715-2719(b)(2)(ii)(E)(1) .................................................. 6
29 C.F.R. § 2590.715-2719(b)(2)(ii)(E)(3) .................................................. 7

## Other Authorities

G. Bogert & G. Bogert, Law of Trusts and Trustees ...................................... 20
J. Story, Comments on Equity Jurisprudence ............................................. 20
Oxford English Dictionary (3d Ed. 2020) ...................................................... 17

## INTRODUCTION

Plaintiff, **JULIE A. SU**, Acting Secretary of Labor, United States Department of Labor, ("Acting Secretary") opposes *Defendant UMR, Inc.'s Motion to Dismiss Plaintiff's Complaint in Part* (Dkt. #11).

## BACKGROUND

This litigation involves the ongoing refusal of the nation's largest third-party administrator of health benefit plans to comply with fundamental protections offered to participants and beneficiaries in such plans under the Employee Retirement Income Security Act of 1974 ("ERISA"). The Acting Secretary alleges that UMR, Inc. ("UMR") systematically adjudicated claims for urinary drug screening ("UDS Claims") and hospital emergency services ("ER Claims") in a manner that flagrantly violated ERISA, including the statute's strict fiduciary duties. These practices affected thousands of participants in at least 2,136 ERISA-covered health plans for which UMR serves as plan administrator (the "Plans").

In seeking to dismiss the Acting Secretary's claims to the extent they seek retrospective relief, [1] UMR notably does not contest the plausibility of the complaint's factual allegations, or whether those allegations amount to ERISA violations. Instead, UMR contends that even if it violated ERISA for years through its improper

---

[1] As stated in its motion, "At this time, UMR seeks dismissal of only the claims for retrospective relief. The Acting Secretary's claims for prospective relief can be addressed at a later stage of this case or potentially resolved through settlement if the retrospective claims are dismissed." (Dkt. #12 at 7).

1

adjudication of ER and UDS Claims, the Acting Secretary—to whom Congress vested authority to enforce ERISA—is powerless to do anything about it, save for (potentially) enjoining UMR from violating ERISA going forward. According to UMR, the only way it can be held fully accountable for its past widespread wrongs is if each affected participant in the thousands of different plans to which UMR applied its unlawful policies brings an individual claim for benefits under ERISA section 502(a)(1)(B) (a cause of action not available to the Acting Secretary). That contention is as divorced from common sense as it is from ERISA's text, purpose, and the Supreme Court precedent construing it, all of which support this Court finding that the Acting Secretary of Labor has properly stated claims for relief under ERISA sections 502(a)(2) and 502(a)(5). 29 U.S.C. § 1132(a)(2), (5).

## I.   Statutory Background

### A.  ERISA's Fiduciary Requirements Under Section 404

The Acting Secretary of Labor is responsible for enforcing the fiduciary obligation provisions in Title I of ERISA. *See* 29 U.S.C. §§ 1132, 1134-35. ERISA seeks "to protect . . . the interests of participants . . . and . . . beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries . . . and . . . providing for appropriate remedies . . . and ready access to the Federal courts." 29 U.S.C. § 1001(b). It does so, in part, by requiring fiduciaries, such as UMR, to follow strict duties including, in pertinent part, acting prudently and following plan documents. "These fiduciary duties draw much of their content from the common law

of trusts, the law that governed most benefit plans before ERISA's enactment," *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996) (citations omitted), and are "the highest known to law." *Chesemore v. All. Holdings, Inc.*, 886 F. Supp. 2d 1007, 1041 (W.D. Wis. 2012) (Conley, J.) ("*Chesemore I*") (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n. 8 (2d Cir.1982)), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016). ERISA does not "mandate what kind of benefits employers must provide." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833, (2003) (citation omitted). ERISA "focus[es] on the written terms of the plan" which "in short, [are] at the center of ERISA*." Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013).

As relevant here, ERISA section 404(a)(1)(B) requires a fiduciary to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Killian v. Concert Health Plan*, 742 F.3d 651, 664 (7th Cir. 2013) (quoting 29 U.S.C. § 1104(a)(1)(B)). ERISA section 404(a)(1)(D) requires a fiduciary to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III." *Crista v. Wisc. Physicians Serv. Ins. Corp.*, No. 18-CV-365-WMC, 2021 WL 3511092, at *17 (W.D. Wis. Aug. 10, 2021) (Conley, J.) (quoting 29 U.S.C. § 1104(a)(1)(D)).

### B.  ERISA's Requirements for Group Health Plans Under Section 715

ERISA also imposes substantive coverage requirements applicable to welfare benefit plans. In particular, the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), and the Health Care and Education Reconciliation Act, Pub. L. No. 111-152, 124 Stat. 1029 (2010) (collectively known as the "ACA"), added ERISA section 715, "Additional Market Reforms," which incorporates the provisions of part A of title XXVII of the Public Health Service Act, 42 U.S.C. § 300gg et seq., and makes them applicable to group health plans. 29 U.S.C. § 1185d. Pursuant to ERISA section 715, section 2719A of the Public Health Service Act requires group health plans that offer benefits for services in a hospital emergency room to do so in accordance with the prudent layperson standard, which mandates coverage for emergency medical conditions defined as:

> [A] medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that a prudent layperson, who possesses an average knowledge of health and medicine, could reasonably expect the absence of immediate medical attention to result in a condition . . .
> (i)       placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy;
> (ii) serious impairment to bodily functions; or
> (iii) serious dysfunction of any bodily organ or part . . .

42 U.S.C. § 300gg-19a, id. § 1395dd(e)(1)(A)(i)-(iii) (emphasis added).

### C.  ERISA's Procedural Requirements for Benefit Determinations Under Section 503

ERISA and its implementing regulations also establish a comprehensive procedure for claims adjudication. ERISA section 503 provides: "In accordance with

4

regulations of the Secretary, every employee benefit plan shall . . . provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant . . . ."

Pursuant to ERISA section 503's directive, the Secretary has promulgated regulations governing the claims process, designed to "set[] forth the minimum requirements for employee benefit plan procedures pertaining to claims for benefits." 29 C.F.R. § 2560.503-1(a); *see Aetna Health Inc. v. Davila*, 542 U.S. 200, 220 (2004) (noting "[t]he relevant regulations . . . establish extensive requirements"). The Department's claims procedure regulation provides, in relevant part:

> Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures). The claims procedures for a plan will be deemed to be reasonable only if . . . [t]he claims procedures do not contain any provision, and are not administered in a way, that unduly inhibits or hampers the initiation or processing of claims for benefits. . . .

29 C.F.R. § 2560.503-1(b). The regulation defines "adverse benefit determination" as "any of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit." 29 C.F.R. § 2560.503-1(m)(4).

The claims procedure regulation further provides that, when receiving adverse benefit determinations, participants must be provided with, among other things:

(i)   The specific reason or reasons for the adverse determination;
(ii)  Reference to the specific plan provisions on which the determination is based;

5

(iii)    A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv)    A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a)of the Act following an adverse benefit determination on review

(v)    In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits,

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request…

29 C.F.R. § 2560.503-1(g)(1).

In addition, pursuant to the ACA, the Secretary of Labor promulgated new regulations which modified some of the requirements of 29 C.F.R. § 2560.503-1. *See* 29 C.F.R. § 2590.715-2719(b). Among the modifications is a requirement that a notice of adverse benefit determination include a statement describing the availability, upon request, of the diagnosis code and its corresponding meaning, and the treatment code, and its corresponding meaning. *See* 29 C.F.R. § 2590.715-2719(b)(2)(ii)(E)(1). The new regulations also require that a notice of adverse benefit determination include the denial code, its corresponding meaning and a description of the plan's standard, if any, that was used in denying the claim. *See* 29 C.F.R. § 2590.715-2719(b)(2)(ii)(E)(3).

6

### D. ERISA's Causes of Actions for Secretarial Enforcement Under Sections 502(a)(2) and (5)

Section 502(a)(2) allows the Acting Secretary, as well as participants and beneficiaries, to bring a cause of action for "appropriate relief under section 409." 29 U.S.C. § 1132(a)(2). Section 409, broadly entitled "liability for breach of fiduciary duty," provides that a person "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter" (such as those imposed by section 404, including section 404(a)(1)(B) (prudence) 404(a)(1)(D) (following plan documents) (*see* Dkt. #1 ¶ ¶ 51; 72), are personally liable "to make good to such plan any losses to the plan resulting from each such breach, to restore to such plan any profits" made using plan assets, and "shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a). As the Supreme Court has recognized, the "[i]nclusion of the Secretary of Labor is indicative of Congress' intent that actions for breach of fiduciary duty [under section 502(a)(2)] be brought in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985).

Section 502(a)(5) allows the Acting Secretary "to enjoin any act or practice which violates any provision of [ERISA Title I], or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of [ERISA Title I]." 29 U.S.C. § 1132(a)(5). The Supreme Court has characterized a nearly identical provision, section 502(a)(3) (which is available to participants, beneficiaries, and fiduciaries), as a "catchall" that acts "as a safety net, offering appropriate

7

equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity*, 516 U.S. at 512.

## II. Factual Background

### A. UMR's Policies for Adjudicating UDS and ER Claims Violate ERISA's Fiduciary Standards and Substantive Requirements for Welfare Plans

The Acting Secretary's complaint alleges that UMR systematically adjudicated UDS and ER Claims using internal policies that violated ERISA. Regarding UDS Claims, the 2,136 Plans for which UMR serves as third-party administrator all required UMR to determine whether a UDS claim was medically necessary. (Dkt. #1 ¶ 6). But instead of following the "medically necessity" standard required by the relevant Plan documents, UMR simply categorically denied all UDS Claims until August 25, 2018. Then, it began denying all UDS Claims that were not performed in an emergency setting, still without performing any medical necessity review. (Dkt. #1 ¶¶ 6; 56-62). The Acting Secretary's complaint alleges that by adjudicating UDS Claims without evaluating medical necessity, UMR violated its fiduciary duties of prudence and to act in accordance with plan documents. *See* 29 U.S.C. § 1104(a)(1)(B), (D) (Dkt. #1 ¶ 72).

For ER Claims, the  ACA, which, as explained, is incorporated in ERISA and the terms of the ERISA plans UMR administers, requires plan administrators to review such claims using a "prudent layperson standard." This standard, which has been in place since 2011, requires plan administrators to cover emergency claims for which a prudent layperson "who possesses an average knowledge of health and medicine, could reasonably expect the absence of immediate medical attention to result in"

serious jeopardy, impairment, or disfunction. 42 U.S.C. § 300gg-19a, *id.* §

1395dd(e)(1)(A)(i)-(iii); *Am. Coll. of Emergency Physicians v. Blue Cross & Blue Shield*

*of Ga.*, 833 F. App'x 235, 237 (11th Cir. 2020). Rather than apply a prudent layperson

standard as required by ERISA and the Plans' terms, UMR has instead systematically

adjudicated ER Claims solely based on diagnosis codes across 371 plans (the

"Diagnosis Code List Plans"). (Dkt. #1 ¶¶ 24-51). As a result, the Acting Secretary

alleges that UMR has violated its fiduciary duties of prudence and adherence to plan

documents, 29 U.S.C. § 1104(a)(1)(B), (D), as well as the substantive requirements of

ERISA section 715, 29 U.S.C. § 1185(d). (Dkt. #1 ¶ 51).

### B.  UMR's Adverse Benefit Determinations Violate ERISA's Notice Requirements

In addition to UMR's systematic fiduciary breaches in processing ER and UDS

Claims, UMR also failed to comply with the claims procedure requirements of ERISA

section 503 and its implementing regulation. (*Id.* ¶¶ 34-39, 48-51, 64-72). That

section requires ERISA plans to provide adequate notice of benefit denials. *See* 29

U.S.C. § 1133. UMR failed to provide to participants and beneficiaries whose claims

for benefits had been denied adequate notice in writing. Specifically, UMR failed to

set forth the specific reasons for such denials and the appeals process, thereby failing

to administer the Diagnosis Code List Plans in full compliance with ERISA section 503

and the claims procedure regulation implementing it. *See* 29 C.F.R. § 2560.503-1, as

modified by 29 C.F.R. § 2590.715-2719(b). (Dkt. #1 ¶¶ 51; 72).

### C.  The Acting Secretary Seeks Relief to Remedy UMR's ERISA Violations

To remedy UMR's ERISA violations in adjudicating UDS and ER Claims and notifying participants of its adverse benefit determinations, the complaint seeks two broad forms of relief, one forward looking and one backward looking. Prospectively, the complaint asks the Court to enter an order requiring UMR to reform its procedures for adjudicating ER and UDS Claims to comply with ERISA, and to enjoin UMR from committing future violations. (Dkt. #1 at 17). Retrospectively, the complaint seeks to require UMR to readjudicate all ER and UDS Claims that were fully or partially denied from January 1, 2015, to the present, in a manner that complies with ERISA. *Id.* The complaint seeks this relief under both ERISA sections 502(a)(2) and 502(a)(5). UMR's Motion to Dismiss challenges only the retrospective relief sought by the Secretary under sections 502(a)(2) and 502(a)(5).

### STANDARD OF REVIEW

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). The two leading cases interpreting the Rule 12(b)(6) pleading standard are *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Seventh Circuit has described *Twombly* as establishing "two easy-to-clear hurdles:" "First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a

speculative level . . . ." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation and quotation marks omitted). The Court must "accept all factual allegations in the complaint as true and draw reasonable inferences" in favor of the plaintiff. *Dominick's Finer Foods, LLC v. UFCW Unions & Emps. Midwest Pension Fund*, 390 F. Supp. 3d 939, 940 (N.D. Ill. 2019) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 746 (7th Cir. 2012)).

## ARGUMENT

### I. Summary of Argument

In its partial motion to dismiss, UMR does not contest the plausibility of the complaint's factual allegations or whether they rise to ERISA violations. Instead, it asks this Court to dismiss the Acting Secretary's claims for retrospective relief even assuming UMR has been systematically violating ERISA in adjudicating ER and UDS Claims, because supposedly ERISA—a remedial statute that the Acting Secretary administers and enforces—offers the Acting Secretary no remedy to hold UMR to account for its past misconduct. To the contrary, the readjudication remedy sought in the complaint is supported by the language of the statute as interpreted by the Supreme Court, ERISA's purposes, and pre-existing trust law. First, the complaint states a claim for relief under section 502(a)(2) because the Acting Secretary properly seeks "equitable or remedial relief" for the plan to redress UMR's fiduciary violations. Contrary to UMR's argument, the Supreme Court has clearly indicated that monetary losses to an ERISA plan are not required to state a claim under section 502(a)(2). *See*

*Russell*, 473 U.S. at 138. Second, the complaint also states a claim for relief under section 502(a)(5)'s "catchall" cause of action because the Acting Secretary seeks "appropriate equitable relief" for UMR's ERISA violations, given that readjudication is tantamount to a mandatory injunction and specific performance, both of which are traditional equitable remedies. The fact that an individual participant can bring a claim for benefits under ERISA section 502(a)(1)(B)–which UMR says operates to bar the Acting Secretary's claim under section 502(a)(5)–has no bearing on whether the Acting Secretary of Labor can separately enforce ERISA to redress systematic, plan-wide violations.

## II.  Systematic Fiduciary Breaches in Administering Claims Are Actionable under ERISA section 502(a)(2)

### A.  A Monetary Loss to an ERISA Plan Is Not Needed to State a Claim under Section 502(a)(2) to Redress Systematic Plan-Wide Breaches

As noted, ERISA section 502(a)(2) allows the Acting Secretary to bring a cause of action for "appropriate relief under section 409." 29 U.S.C. § 1132(a)(2). Given section 409's repeated references to "the plan," the Supreme Court has explained that section 502(a)(2) is intended to provide relief "singularly to the plan" for fiduciary violations as opposed to "an individual beneficiary." *Russell*, 473 U.S. at 142-43 (referring to relief under section 409 being "plan-related"). In other words, "[a]n ERISA plan may . . . recover *benefits* to which its participants are entitled but not 'extracontractual damages,' such as punitive damages or damages for emotional distress." *Chesemore v. All. Holdings, Inc.*, 948 F. Supp. 2d 928, 940 (W.D. Wis. 2013)

12

(Conley, J.) ("Chesemore II"), amended No. 09–cv–413, 2013 WL 6989526 (W.D. Wis. Oct. 16, 2013), and *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016) (citing *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007)) (emphasis in original).

UMR incorrectly argues "[t]he complaint's reliance on § 502(a)(2) to seek relief under § 409 is squarely foreclosed by *Russell* " because *Russell* holds that section 409 "authorizes relief only for *losses* to 'the plan itself.'" (Dkt. # 12 at 7) (emphasis added) (quoting *Russell*, 473 U.S. at 143-44). UMR's argument is misplaced because *Russell* does not impose a plan-loss requirement on section 502(a)(2) claims. To be sure, section 409 authorizes the Acting Secretary, among other things, to recover plan losses and seek disgorgement of profits made with plan assets. *See* 29 U.S.C. § 1109(a) (making fiduciaries "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . . ."). However, in addition to personal liability for plan losses and restoration of profits, section 409 also subjects breaching fiduciaries to a third category of liability: "such *other* equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a) (emphasis added).

Nowhere does section 409 say that plan losses are a prerequisite to "other equitable or remedial relief." In fact, *Russell* made clear that a financial loss to an

ERISA plan is *not* required to bring a claim under section 502(a)(2). In *Russell*, the plaintiff "had been paid all benefits to which she [was] contractually entitled," but sought under section 502(a)(2) extra-contractual, consequential damages stemming from the period when the plan refused to pay those contractual benefits. *Russell*, 473 U.S. at 137. In holding that section 502(a)(2) did not authorize that type of compensatory individualized relief, the Court noted that Congress intended section 409 to provide "plan-related relief," meaning "remedies that would protect the entire plan, rather than . . . the rights of an individual." *Id.* at 142.

But the Court emphasized that section 502(a)(2) *would* authorize the plaintiff's claim if the "plan administrator's refusal to pay contractually authorized benefits had been willful and part of a larger systematic breach of fiduciary obligations," *id.* at 147, in which case the plaintiff "could have asked for removal of the fiduciary pursuant to [sections] 502(a)(2) and 409(a)." *Id.* at 147. In positing this hypothetical—which UMR conveniently omits from its brief—the Court made no mention of a requirement that the beneficiary also allege some separate financial loss to the plan, nor did it equate a "systematic breach" with one that results in losses to the plan itself. Indeed, the only difference between the facts in *Russell* and the systematic-breach scenario the Court deemed actionable under section 502(a)(2) was the *extent* of the fiduciary misconduct, not the presence of a financial loss to the plan.[2]

---

[2] Although UMR may argue the Supreme Court's "hypothetical" (the Court's own term) about a "plan administrator's refusal to pay contractually authorized benefits [that] had been willful

14

Following *Russell*, other district courts have allowed similar claims to proceed under section 502(a)(2) without any showing of a pecuniary loss to a plan trust. In *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*, 661 F. Supp. 2d 1076, 1080 (D. Ariz. 2009), on reconsideration in part, No. CV-08-0457, 2009 WL 2710151 (D. Ariz. Aug. 26, 2009), the plaintiffs sued various plan administrators for wrongful denial of benefits. Because the plaintiffs alleged the "improper denial of claims . . . were willful and systematic, as contemplated in *Massachusetts Mutual*," the court found they were appropriate under section 502(a)(2). *Spinedex*, 661 F. Supp. 2d at 1092. In *Armijo v. ILWU-PMA Welfare Plan*, No. 15-cv-01403, 2017 WL 10718576, at *2 (C.D. Cal. Aug. 1, 2017), the plaintiffs sued various defendants, including a third-party administrator, who "routinely denied preauthorized claims as not medically necessary or otherwise not covered by the Plan, despite the determination of the nurse during the preauthorization review." Because the plaintiffs alleged the third-party administrator's systematic fiduciary breaches harmed the plan as a whole, the court found they stated a claim under section 502(a)(2). *Armijo*, 2017 WL 10718576, at *5. *See also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1043 (C.D. Cal. 2011) (allowing claims that insurers

---

and part of a larger systematic breach of fiduciary obligations," id. at 147, is dicta, the Seventh Circuit recognizes the importance of such hypotheticals when they are contained in Supreme Court opinions. In short, they must not be ignored. *See, e.g., Nichol v. Pullman Standard*, 889 F.2d 115, 119–21 (7th Cir.1989) (considering and respecting Supreme Court dictum as controlling where it was consistent with the plain language of the statute).

systematically depressed the usual, customary, and reasonable rates for out-of-network services to proceed under section 502(a)(2)).

*Russell's* guidance regarding section 502(a)(2) clearly resolves the issue in favor of the Acting Secretary because she alleges a "willful" and "systematic breach" perpetrated by UMR in its adjudication of UDS and ER Claims. First, for UDS Claims, despite the Plans requiring UMR to evaluate those claims for medical necessity, UMR simply denied them all until August 26, 2018, when it began denying all claims that were not in an emergency setting. (Dkt. #1 ¶¶ 57-59). This policy was in place for all 2,136 Plans. (*Id.* ¶ 12). Second, for ER Claims, and despite Diagnosis Code List Plans' terms and ERISA section 715 requiring application of a prudent layperson standard, UMR simply denied all claims that lacked certain diagnosis codes. (*Id.* ¶¶ 24-51). This policy was in place for 371 of the Plans. (*Id.* ¶ 30). These were not one-off benefit decisions, but rather systematic, plan-wide breaches.

Having established that section 502(a)(2) does not require a financial loss to the plan and that UMR's systematic breaches are of the type the Supreme Court has deemed actionable under section 502(a)(2), the only remaining questions, then, are whether the relief sought by the Acting Secretary—readjudication of claims—qualifies as "equitable or remedial relief" that is "plan-related" and not individualized, like the fiduciary-removal remedy identified by the Court in *Russell*. As explained below, it does.

**B. Claims Readjudication Qualifies as Both Equitable and Remedial Relief Under Section 409**

    1. <u>Claims readjudication is remedial relief</u>

First, claims readjudication qualifies as both equitable and remedial relief (either one of which would be sufficient). *See* 29 U.S.C. § 1109(a) (authorizing "equitable *or remedial relief* as the court may deem appropriate") (emphasis added). Taking the latter first, "remedial relief" must mean something other than "equitable . . . relief" given that the two phrases are separately listed in the statute. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotations and citation omitted); *Mertens v. Hewitt Associates*, 508 U.S. 248, 258 (1993) (noting distinction between "equitable" and "remedial" relief drawn in section 502(a)(2)). Indeed, "remedial" is a broad term, meaning "providing or offering a remedy, tending to relieve or redress something." OXFORD ENGLISH DICTIONARY (3d ed. 2020). Because ordering the readjudication of ER Claims and UDS Claims under a plan-compliant reimbursement methodology would "relieve or redress" UMR's improper adjudication of those same claims, it qualifies as "remedial relief" under section 409(a).

    2. <u>Claims readjudication is also equitable relief</u>

While its "remedial" nature is alone enough, claims readjudication also qualifies as "equitable relief." The Supreme Court has interpreted the ERISA phrase

"equitable relief" under ERISA section 502(a)(3) (the same phrase used in section 502(a)(2)) as referencing "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens*, 508 U.S. at 256. To determine whether the relief sought is legal or equitable in nature, courts "examine[] cases and secondary legal materials to determine if the relief would have been equitable '[i]n the days of the divided bench.'" *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362 (2006) (describing and quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). The claims readjudication sought by the Acting Secretary is akin to at least two forms of relief that would have been equitable in the days of the divided bench: injunction and specific performance.

Readjudication is essentially a form of injunction, as this Court recognized earlier this year:

> Certainly, in some cases, reprocessing a coverage request could indeed provide effective relief to an ERISA plaintiff. For example, as the Supreme Court explained in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), a beneficiary who is denied benefits . . . could seek a preliminary injunction requiring a reprocessing of their claim. *Id.* [at 211-12]. In such circumstances, the claimant's injury (denial of treatment and/or monetary loss) could also be redressed by reprocessing their coverage claim. Likewise, an ERISA plaintiff who is still seeking the denied treatment, or who is seeking long-term disability benefits or other monetary relief, could receive effective relief via a remand for reprocessing.

*Berceanu v. UMR, Inc.*, No. 19-CV-568-WMC, 2023 WL 1927693, at *7 (W.D. Wis. Feb. 10, 2023) (Conley, J.). And it is well-settled that "injunction is inherently an equitable remedy." *Great-West*, 534 U.S. at 211 n.1 (citing *Reich v. Continental Casualty Co.*, 33

18

F.3d 754, 756 (7th Cir. 1994)); *CIGNA Corp. v. Amara*. 563 U.S. 421, 440 (2011) ("The District Court's affirmative and negative injunctions obviously fall within this category" [of traditional equitable remedies]); *see also* 1 DAN B. DOBBS, LAW OF REMEDIES § 1.2 at 11 (2d ed. 1993); *Shapiro v. Aetna, Inc*., No. 22-cv-1958, 2023 WL 4348601, at *7 (D.N.J., June 5, 2023) ("A reprocessing order is an appropriate form of equitable relief for ERISA actions.")*; but see Wit v. United Behavioral Health,* 58 F.4th 1080, 1095 (9th Cir. 2023).[3] The fact that individual participants *may* ultimately benefit monetarily from the relief requested (depending on the outcome of the readjudication) does not change the equitable nature of the remedy. *See, e.g., Mathews v. Chevron Corp.*, 362 F.3d 1172, 1186 (9th Cir. 2004) (holding that an order modifying plan records to instate plaintiffs into the plan and to pay them benefits was available "equitable relief"; "[o]n its face, an order to modify plan records is not an award of monetary damages," and "the mere payment of money does not necessarily render the award

---

[3] On claims brought by participants pursuant to ERISA section 502(a)(3), the Ninth Circuit recently reversed a district order requiring a third-party administrator to reprocess previously denied claims, citing, among other things that "Plaintiffs and the district court did not explain or refer to precedent showing how a 'reprocessing' remedy constitutes relief that was typically available in equity." *See Wit v. United Behavioral Health,* 58 F.4th 1080, 1095 (9th Cir. 2023). However, the court did not undertake any analysis as to whether reprocessing could be analogized to a remedy available at equity, simply faulting plaintiffs and the district court for failing to do so. Here, the Acting Secretary provides the legal justification for readjudication as equitable relief. In addition, the Ninth Circuit's discussion of reprocessing was arguably dicta, since the panel separately and independently held that relief was unavailable under section 502(a)(3) because the plaintiffs could have brought their claims under ERISA section 502(a)(1)(B). *See id.*

19

compensatory 'monetary damages'"). Thus, the claims readjudication the Acting Secretary seeks is "equitable relief."

Readjudication of health plan claims is also a modern-day form of specific performance, a quintessential equitable remedy. *See* G. BOGERT & G. BOGERT, LAW OF TRUSTS AND TRUSTEES § 861 ("The court may order the trustee or his successor in interest, to perform the trust as a whole, or to take some particular step in trust administration . . . ."). J. STORY, COMMENTS ON EQUITY JURISPRUDENCE, § 716 ("The jurisdiction of courts of equity to decree a specific performance of agreements is certainly of a very ancient date . . . . ."). Indeed, prior to the merger of law and equity, "a court of law [was] inadequate to decree a specific performance, and [could] relieve the injured party only by a compensation in damages, which, in many cases, would fall far short of the redress which his situation might require." *Id.; see also id.* at § 796 ("The party injured by the non-performance of a contract has the choice to resort, either to a court of law for damages, or to a court of equity for a specific performance."). Here, the readjudication remedy sought by the Acting Secretary amounts to a request for a specific performance—namely, that UMR reprocess all denied (or partially denied) ER and UDS Claims in compliance with ERISA and the governing terms of the Plans (*see* Dkt. # 1 at 17, ¶ B)—and thus squarely qualifies as relief that "would have been equitable in the days of the divided bench." *Great-West*, 534 U.S. at 212.

To be sure, the relief sought by the Secretary would likely result in payment of previously denied ER and UDS Claims. And the Supreme Court has made clear that "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Great-West*, 534 U.S. at 211-12. However, the Secretary's readjudication remedy stands on its own and supports a valid claim for relief under section 502(a)(2) and (5) without regard to whether it will result in some instances in the payment of previously denied claims (a remedy the complaint does not even request).

But even taking the two remedies together (readjudication and payment of claims following readjudication), at equity, "[w]herever compensation or damages are incidental to other relief, as, for instance, where a specific performance is decreed . . . there, it seems clear, that the jurisdiction properly attaches in equity; for it flows, and is inseparable from the proper relief." J. STORY, COMMENTS ON EQUITY JURISPRUDENCE, § 796. Thus, "where a bill is brought by the vendor against the vendee for a specific performance of the contract of sale, and of a payment of the purchase-money, if the decree is for a specific performance, equity will decree the payment of the purchase-money also, as incidental to the general relief, and to prevent a multiplicity of suits, although the vendor might in many cases have a good remedy at law for the purchase-money." *Id.*

Because the payments of previously-denied claims are "incidental" to the readjudication remedy—indeed, they are purely a function of readjudication and will

only be paid if required by ERISA and the Plans' governing documents—they too qualify as appropriate equitable relief. Thus, requiring UMR to readjudicate claims is merely specific performance of the documents governing the Plans—a traditional equitable remedy.

### 3. UMR's arguments about claims readjudication are wrong

UMR contends that because courts often remand benefit claims brought under ERISA section 502(a)(1)(B) back to the plan for reprocessing, this must mean readjudication is "statutory" rather than equitable. (Dkt. #12 at 24). But that is a false dichotomy. Relief is "equitable" if it was "typically available in equity," *Great-West*, 534 U.S. at 210, as UMR itself acknowledges. (*See* Dkt. #12 at 23). As explained, an order to re-adjudicate claims in conformance with ERISA and plan terms satisfies that standard because it is analogous to injunction and specific performance, both traditional equitable remedies. And if a remedy was typically available at equity, then it qualifies as "equitable relief" regardless of whether it is often awarded in ERISA cases (either as a function of statutory text or practice). Indeed, under UMR's logic, injunction—because it is specifically authorized in ERISA section 502(a)(2), *see* 29 U.S.C. 1132(a)(2)—would be non-equitable "statutory" relief even though injunction is a bedrock equitable remedy.[4] *See Mertens*, 508 U.S. at 256 (explaining that

---

[4] After calling readjudication a statutory remedy, UMR in its next breath says that readjudication "actually is not a remedy in and of itself" because participants bringing claims under section 502(a)(1)(B) really are seeking benefits. (Dkt. #12 at 24). UMR's doublespeak aside, plaintiffs seek multiple remedies in lawsuits all the time; the fact that one is temporally

"'equitable relief'" can also refer to those categories of relief that were *typically* available in equity (such as *injunction*, mandamus, and restitution, but not compensatory damages)." (emphasis added).

UMR also argues that "readjudication is not an injunction in the traditional, equitable sense" because injunctions are all immediately appealable (citing 28 U.S.C. §§ 1291 and 1292), whereas the Seventh Circuit has explained that orders remanding benefit claims for reprocessing can sometimes qualify as appealable final decisions and sometimes not. (Dkt. #12 at 25) (citing *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 978-80 (7th Cir. 1999). But all the Seventh Circuit actually *held* in *Perlman* was that the remand order in that case was final and appealable because it ended the lawsuit, just as the readjudication remedy sought by the Acting Secretary would end this one. To be sure, the Seventh Circuit surmised that it would not have appellate jurisdiction under 28 U.S.C. § 1291 (authorizing review of "final decisions") if a district court remands to the plan but "postpones adjudication until after additional evidence has been analyzed," since there would be no "final decision" at that point. *Perlman,* 195 F.3d at 979. But not only is that scenario materially different from the final readjudication order sought by the Acting Secretary here, the Seventh Circuit said nothing at all about whether such

_____

prefatory to another does not mean that it somehow does not qualify as a remedy, much less say anything about whether it was one that was "typically available in equity." Regardless, in this case, the sole retrospective relief the Acting Secretary seeks in her complaint is readjudication.

a remand would be an appealable *interlocutory* injunction under 28 U.S.C. § 1292. In short, *Perlman* at worst undermines UMR's motion, and at best is irrelevant.

### C.  Plan-wide Readjudication is "Plan-related" and Not Individualized

Plan-wide readjudication is "plan-related" and not individualized, *Russell*, 473 U.S. at 142. It requires UMR to readjudicate all UDS Claims for 2,136 Plans and all ER Claims for 371 Plans for the periods in question, not merely those of certain select participants. Unlike paying individualized consequential damages to a single participant (as in *Russell*), adjudicating claims pursuant to plan terms is core fiduciary conduct, and thus epitomizes a "plan-related" remedy. *See, e.g., Davila*, 542 U.S. at 220 ("[A]dministrators making benefits determinations, even determinations based extensively on medical judgments, are ordinarily acting as plan fiduciaries . . .").

In other words, the readjudication remedy simply requires UMR to administer the Plans as it should have done in the first instance. If requiring UMR to go back and re-do its administration of the plans is not a "plan related" remedy, it is difficult to imagine what would qualify. Indeed, readjudication is no less '"plan related" than the fiduciary-removal remedy that the Supreme Court deemed permissible in *Russell;* the only difference is that removal concerns *who* runs a plan, whereas readjudication concerns *how* they run it. Moreover, readjudication is not tantamount to awarding benefits to an individual participant, as there is no guarantee that readjudication will result in a higher benefit calculation for a given participant. The mere prospect that *some* participants *may* receive additional benefit payments does not make the

24

readjudication remedy impermissible individualized relief. *Hawkins v. Cintas Corp.*, 32 F.4th 625, 634 (2022) (6th Cir. 2022) ("The fact that the individual Plaintiffs will indirectly benefit from a remedy accruing to the Plan as a whole does not render the claims individualized.").

### III. If the Acting Secretary Cannot Obtain Relief Under Section 502(a)(2), Then It Must Be Available Under Section 502(a)(5)

Even if the Acting Secretary cannot proceed under section 502(a)(2), which she can, then certainly she can proceed under section 502(a)(5), which allows the Acting Secretary "to enjoin any act or practice which violates any provision of [ERISA Title I], or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of [ERISA Title I]." 29 U.S.C. § 1132(a)(5). The Supreme Court has characterized a nearly identical provision, section 502(a)(3) (which is available to participants, beneficiaries, and fiduciaries), as a "catchall" that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity*, 516 U.S. at 512. For example, because section 502(a)(1)(B) provides participants a cause of action for benefits due under the terms of a plan, some courts dismiss section 502(a)(3) claims brought by participants alleging that a fiduciary breached its duties by failing to pay plan benefits as a repackaged claim under section 502(a)(1)(B). *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 257 (2008) (Roberts, J., concurring) (describing the plaintiff's claim as one "for benefits that turns on the application and interpretation of the plan terms," and noting that "it is at least arguable that a claim of this nature

25

properly lies only under § 502(a)(1)(B) of ERISA."); *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) (assuming without deciding that "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is un available [sic] under subsection (a)(3).") (citation omitted).

UMR unpersuasively argues that because participants are precluded from bringing section 502(a)(3) claims where the injury is redressable by the participant under section 502(a)(1)(B), the Acting Secretary is likewise precluded from bringing a claim under section 502(a)(5) in the same circumstance. (Dkt. #12 at 18-23). In other words, UMR contends that even though the Acting Secretary cannot bring claims under section 502(a)(1)(B), the fact that participants can bring such claims for individual benefits (as well as to redress violations of ERISA section 503 and the claims procedure regulation) precludes the Acting Secretary from separately proceeding under section 502(a)(5) to redress systematic, plan-wide ERISA violations. Not only does this argument make a mockery of the authority Congress vested in the Secretary to enforce ERISA, it also neglects the Supreme Court's guidance on section 502(a)(3) in *Varity*. UMR also argues that, in any event, readjudication does not qualify as "equitable relief," a contention that is wrong for the same reasons discussed in Section (II)(A)(2)(b) above.

**A. The Ability of Participants to Bring Claims for Benefits Under Section 502(a)(1)(B) Has No Bearing on Whether the Secretary Can Separately Bring Claims Under Section 502(a)(5) to Redress Plan-Wide ERISA Violations**

UMR's central argument in seeking to dismiss the Secretary's claims under section 502(a)(5) to the extent they seek retrospective relief is that because individual plan participants could bring individual claims for benefits under section 502(a)(1)(B), the Acting Secretary is precluded from seeking retrospective relief on a plan-wide basis for plan-wide ERISA violations under section 502(a)(5). UMR's argument is contrary to the letter and logic of the Supreme Court decision from which it supposedly emanates, has no basis in the text of section 502(a)(5), and would gut the enforcement authority Congress vested in the Secretary.

1. UMR misconstrues the Supreme Court's decision in *Varity*

UMR's argument disregards Supreme Court precedent, as *Varity* itself confirms that because section 502(a)(1)(B) claims are unavailable to the Acting Secretary, the inclusion in ERISA of that cause of action should not be a barrier to the Acting Secretary bringing a claim under section 502(a)(5). In *Varity*, the Court explained that "[t]he plaintiffs in this case could not proceed under [section 502(a)(1)(B)] because they were no longer members of the Massey-Ferguson plan, and therefore, had no 'benefits due [them] under the terms of [the] plan.'" *Varity*, 516 U.S. at 515 (quoting 29 U.S.C. § 1132(a)(1)(B)). And because they also could not sue under section 502(a)(2), since they sought only individual relief, the *Varity* plaintiffs "must rely on [section 502(a)(3)] or they have no remedy at all." *Id.* As the Court put it, "[w]e are not aware of

27

any ERISA-related purpose that denial of a remedy would serve." *Id.* The Acting

Secretary, like the *Varity* plaintiffs, is also unable to bring claims under section

502(a)(1)(B). Therefore, if section 502(a)(2) is unavailable, the Acting Secretary may

proceed under section 502(a)(5)'s catchall. This Court has noted as much. *Crista*,

2021 WL 3511092, at *18 (Conley, J.) ("[T]he Court [in *Varity*] contemplated that a

beneficiary could bring concurrent § 502(a)(1)(B) and § 502(a)(3) claims . . . .").

Indeed, even the district court in *Secretary of Labor v. Macy's, Inc.*—which

erroneously dismissed the Secretary's claims for the same misguided reasons UMR

trumpets here—acknowledged that the "rule that applies to differentiate (a)(1)(B)

claims from (a)(3) claims is not necessary in the (a)(5) context" because the Acting

Secretary does not have authority to bring section 502(a)(1)(B) claims for benefits. S*ee*

*Sec'y of Labor v. Macy's, Inc.*, No. 1:17-CV-541, 2021 WL 5359769, at *11 (S.D. Ohio

Nov. 17, 2021). Rather, the relevant dividing line for section 502(a)(5) claims is

whether ERISA provides the Acting Secretary a more specific enforcement

mechanism to redress defendants' past systematic fiduciary breaches that obviates

the need to invoke section 502(a)(5)'s catchall provision. *See Varity*, 156 U.S. at 512

("This structure suggests that these 'catchall' provisions act as a safety net, offering

appropriate equitable relief for injuries caused by violations that § 502 does not

elsewhere adequately remedy.").

Because section 502(a)(1)(B) is not available to the Acting Secretary (and

assuming the Acting Secretary could not proceed under section 502(a)(2)) then

section 502(a)(5) is available to the Acting Secretary to remedy these systematic fiduciary breaches. This result interprets the identical text of the subparagraphs (a)(2) and (a)(5) consistently while also accounting for the contextual differences between the two provisions.

The Seventh Circuit's unpublished opinion in *Sumpter v. Metro. Life Ins. Co.*, 683 F. App'x 519, 521 (7th Cir. 2017) does not mean that the Acting Secretary's claims for relief under section 502(a)(5) should be dismissed. In the first place, *Sumpter* did not even involve claims by the Secretary of Labor under section 502(a)(5), and is irrelevant for that reason alone. In addition, in *Sumpter*, the Seventh Circuit stated that "a denial of benefits, *without more*, does not constitute a breach of fiduciary duty that can be remedied under the equitable-relief provision; that's what section 1132(a)(1)(B) is for." *Id.* at 521 (emphasis added) (citing *Varity*, 516 U.S. at 515; *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 373 (6th Cir. 2015) (en banc)). The Acting Secretary alleges there is "more," namely UMR's systematic fiduciary breaches affecting thousands of plans requiring readjudication of thousands (if not tens of thousands) of affected ER and UDS Claims. Thus, *Sumpter* is distinguishable and does not affect the Acting Secretary's requests for relief under section 502(a)(5).

To the extent UMR argues that the Acting Secretary cannot bring claims for violations of section 503 and the claims processing regulation simply because they

can be included in section 502(a)(1)(B) claims, it is wrong.[5] ERISA and its

implementing regulations establish a comprehensive procedure for claims

adjudication. Section 503 provides: "In accordance with regulations of the Secretary,

every employee benefit plan shall . . . provide adequate notice in writing to any

participant or beneficiary whose claim for benefits under the plan has been denied,

setting forth the specific reasons for such denial, written in a manner calculated to be

understood by the participant . . . ." 29 U.S.C. § 1133; *see also* 29 C.F.R. § 2560.503-1

(claims procedure regulation). Claims adjudication itself constitutes a fiduciary act.

*See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). ERISA places a "special

standard of care upon a plan administrator" through its fiduciary duty requirements.

*Id.* at 115. Thus, UMR's systematic failures to follow 29 C.F.R. § 2560.503-1 constitute

a breach of fiduciary duty. *See Bartucca v. Katy Indus., Inc.*, Civ. No. N-87-133 (PCD),

1989 WL 225617, at *2-*3 (D. Conn. Jul. 12, 1989).

2. <u>Seriatim benefit claims by individual participants under section 502(a)(1)(B) are no substitute for Secretarial action to remedy widespread, systematic abuse</u>

Though *Varity* alone resolves the matter in the Acting Secretary's favor, UMR's

argument that individual section 502(a)(1)(B) claims are an adequate replacement for

an enforcement action by the Acting Secretary of Labor has no basis in reality. UMR

contends that the problems inherent in depriving the Acting Secretary of a section

---

[5] UMR does not argue the Acting Secretary may not bring her claims alleging failure to comply with ERISA § 715 and its implementing regulations.

502(a)(5) claim for large-scale, systematic fiduciary breaches are somehow ameliorated because plan participants could hypothetically bring section 502(a)(1)(B) claims. (*See* Dkt. #12 at 22) ("Ultimately, participants and beneficiaries are better positioned than other parties to judge whether seeking relief under § 502(a)(1)(B)– including seeking a remand for readjudication–will actually serve their interests."). The Acting Secretary alleges systematic, plan-wide fiduciary breaches that are not unique to one or even a handful of individual participants. The remote possibility that every affected participant in the Plans will bring individual actions under section 502(a)(1)(B) is not an "adequate[] remedy" for the plan-wide fiduciary violations alleged in the complaint. *Varity*, 516 U.S. at 512.

That is all the more true given that, due to UMR's violations of ERISA's claims procedure rules, participants in the Plans were left in the dark as to the reasons for UMR's denials of both sets of claims. UMR should not be able to violate its disclosure obligations to participants, thereby obscuring its violations of ERISA sections 404 and 715, and then turn around and argue that only participants, and not the Acting Secretary, is permitted to hold UMR to account for its past wrongdoing. And as a matter of judicial economy, the courts should not be flooded with tens of thousands cases reviewing the benefit denials resulting from UMR's systematic violations. The Acting Secretary's case is the most efficient mechanism for resolving these claims.

Yet even if participants filing section 502(a)(1)(B) claims en masse could approximate the readjudication remedy the Acting Secretary seeks here, that still

31

would not be a reason to preclude the Acting Secretary from asserting her own enforcement prerogatives. "In § 502(a), Congress granted the Secretary an independent and unqualified right to sue and seek redress for ERISA violations because ERISA plans significantly affect the 'national public interest.'" *Herman v. S.C. Nat'l Bank,* 140 F.3d 1413, 1423 (11th Cir. 1998). While "[p]rivate ERISA litigants seek to redress individual grievances," "in suing for ERISA violations, the Secretary seeks not only to recoup plan losses, but also to supervise enforcement of ERISA, to guarantee uniform compliance with ERISA, to expose and deter plan asset mismanagement, to protect federal revenues, to safeguard the enormous amount of assets and investments funded by ERISA plans, and to assess civil penalties for ERISA violations." *Id.*; *see also Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 696–97 (7th Cir. 1986) ("the Secretary has a separate and distinct interest in seeking injunctive relief and his intervention does not preclude him from seeking to protect this separate interest apart from the interests the plaintiffs seek to protect themselves.").

Because of this national interest, and "the inability of private plaintiffs to adequately represent this interest," *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 340 (4th Cir. 2007), every court of appeals that considered the issue has held that the Secretary of Labor is not bound by prior private litigation when they file an independent action to redress ERISA violations. *Id.* (collecting cases). UMR's view that the mere availability of individual claims for benefits under section 502(a)(1)(B) can supplant Secretarial enforcement under section 502(a)(5) to redress

32

systematic fiduciary breaches is inconsistent with these decisions, and the overall role

Congress envisioned the Secretary of Labor would play in enforcing ERISA.

    3.  <u>UMR's argument is contrary to the text of section 502(a)(5)</u>

In attempting to apply the same strictures imposed on participants under

section 502(a)(3) to claims by the Secretary under section 502(a)(5), UMR also ignores

a material textual difference between the two provisions: unlike section 502(a)(3),

Congress explicitly included within section 502(a)(5) certain instances where the

Acting Secretary is not permitted to bring a claim under that section, and the

availability of benefit claims by participants under section 502(a)(1)(B) is not one of

them. Specifically, section 502(a)(5) begins with the proviso "except as otherwise

provided in subsection (b)," referring to section 502(b). That subsection prohibits

Secretarial enforcement actions in three specific instances: (1) claims related to

vesting, funding, and participation in plans qualified under the Internal Revenue

Code (absent certain exceptions); (2) claims under 29 U.S.C. § 1145 (relating to

delinquent contributions to multiemployer plans); and (3) claims against health

insurance issuers to enforce Part 7 of ERISA Title I (setting forth standards applicable

to group health plans). *See* 29 U.S.C. § 1132(b).

Because Congress has set out specific exceptions to Secretarial enforcement

under section 502(a)(5)–none of which include instances where a participant or

beneficiary may also have a claim for benefits under subsection 502(a)(1)(B)–it is

inappropriate to assume that Congress intended to include additional unenumerated

limitations. "After all, 'common sense, reflected in the canon expressio unius est exclusio alterius, suggests that the specification of one requirement implies' the exclusion of others." *United States v. Jumaev*, 20 F.4th 518, 551–52 (10th Cir. 2021) (quoting *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1312 (10th Cir. 2012) (Gorsuch, J.)); *see also Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (noting that courts have a "duty to refrain from reading a phrase into [a] statute when Congress has left it out").

### B.  The Acting Secretary Seeks  Appropriate Equitable Relief

With the availability of participant claims under section 502(a)(1)(B) no barrier to the Acting Secretary's claim under section 502(a)(5), the only remaining question is whether the Acting Secretary's requested readjudication remedy qualifies as "appropriate equitable relief." *See* 29 U.S.C. 1132(a)(5). For the reasons discussed in Part II above, it surely does. To be clear, though, this Court need not even reach the issue of whether readjudication is equitable relief if it determines that the Acting Secretary properly seek "remedial" relief under section 502(a)(2), which she does for the reasons stated in Part I above.

### IV. Conclusion

ERISA's text, Supreme Court precedent, the statute's purpose, and public policy all support this Court finding that the Acting Secretary has stated claims for relief under sections 502(a)(2) and 502(a)(5). The Acting Secretary respectfully requests this Court deny UMR's motion to dismiss (Dkt. # 11) in its entirety, or in the

alternative, allow the Acting Secretary leave to amend the complaint.

Respectfully submitted,

**SEEMA NANDA**
Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor

/s/ Kevin M. Wilemon
**KEVIN M. WILEMON**
Senior Trial Attorney

**LYDIA FAKLIS**
Trial Attorney

Attorneys for **JULIE A. SU**,
Acting Secretary of Labor, United States
Department of Labor, Plaintiff

P.O. ADDRESS:
U.S. Department of Labor
Office of the Solicitor
230 S. Dearborn St., Room 844
Chicago, IL 60604
T: (312) 353-6973
wilemon.kevin@dol.gov
faklis.lydia.j@dol.gov

35