## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

JULIE A. SU,
Acting Secretary of Labor,
United States Department of Labor,

        Plaintiff,

    v.

                                 CIVIL ACTION NO. 3:23-CV-00513

UMR, INC.,

        Defendant.


## REPLY IN SUPPORT OF DEFENDANT UMR, INC.'S
## <u>MOTION TO DISMISS IN PART</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 3

I.   The Court Should Dismiss The Claims For Retrospective Relief Under
     § 502(a)(5) ................................................................................................. 3

     A.   Equitable Relief Is Unavailable Because § 502(a)(1)(B) Provides An
          Adequate Remedy ............................................................................... 3

     B.   Readjudication Is Unavailable Because It Is Not A Traditional Equitable
          Remedy ............................................................................................. 10

II.  The Court Should Dismiss The Claims For Retrospective Relief Under
     § 502(a)(2) ............................................................................................... 15

     A.   Section 502(a)(2) Does Not Apply Because The Complaint Does Not Seek
          Relief On Behalf Of Any Plan ........................................................... 15

     B.   Relief Is Also Unavailable For The Same Reasons Relief Is Unavailable
          For The Acting Secretary's Retrospective § 502(a)(5) Claims ........... 20

CONCLUSION ................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Armijo v. ILWU-PMA Welfare Plan*,
   No. 15-cv-1403, 2017 WL 10718576 (C.D. Cal. Aug. 1, 2017) ......................................18, 19

*Barnhart v. Sigmon Coal Co.*,
   534 U.S. 438 (2002)..................................................................................................................5

*Berceanu v. UMR, Inc.*,
   No. 19-cv-568, 2023 WL 1927693 (W.D. Wis. Feb. 10, 2023) ...........................................6, 14

*Burns v. Orthotek Inc. Emps. Pension Plan & Tr.*,
   No. 08-cv-190, 2009 WL 631245 (N.D. Ind. Mar. 11, 2009)................................................21

*Chesemore v. All. Holdings, Inc.*,
   948 F. Supp. 2d 928 (W.D. Wis. 2013) .......................................................................16, 17, 19

*Cigna Corp. v. Amara*,
   563 U.S. 421 (2011)................................................................................................................14

*Cinelli v. Sec. Pac. Corp.*,
   61 F.3d 1437 (9th Cir. 1995) ............................................................................................16, 19

*Corley v. United States*,
   556 U.S. 303 (2009)...........................................................................................................21, 22

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*,
   102 F.3d 712 (4th Cir. 1996) ............................................................................................5, 8, 21

*Crista v. Wis. Physicians Serv. Ins. Corp.*,
   No. 18-cv-365, 2021 WL 3511092 (W.D. Wis. Aug. 10, 2021) ...............................................4

*Cromwell v. Kaiser Found. Health Plan*,
   No. 18-cv-6187, 2019 WL 1493337 (N.D. Cal. Apr. 4, 2019)........................................16, 17

*DeMaria v. Horizon Healthcare Servs., Inc.*,
   No. 11-cv-7298, 2015 WL 3460997 (D.N.J. June 1, 2015).....................................................14

*Dombrowski v. Pfister*,
   380 U.S. 479 (1965)................................................................................................................12

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006)................................................................................................................11

*Ehrman v. Standard Ins. Co.*,
   No. 06-cv-5454, 2007 WL 1288465 (N.D. Cal. May 2, 2007)........................................17, 19

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002)...........................................................................................................11, 13

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995)..................................................................................................................4

# TABLE OF AUTHORITIES
*(continued)*

<u>Page(s)</u>

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
   571 U.S. 99 (2013).................................................................................................7

*Herman v. S.C. Nat'l Bank*,
   140 F.3d 1413 (11th Cir. 1998) ............................................................................9

*Huntsinger v. Shaw Grp., Inc.*,
   410 F. Supp. 2d 968 (D. Or. 2006) .....................................................................19

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
   634 F.3d 883 (7th Cir. 2011) ...........................................................................7, 12

*LaRue v. DeWolff, Boberg & Associates, Inc.*,
   552 U.S. 248 (2008)..................................................................................17, 19, 21

*LaSpina v. Anthem Blue Cross Life & Health Ins. Co.*,
   No. 12-cv-707, 2012 WL 3638709 (D. Ariz. Aug. 23, 2012) .............................17

*Loya v. INS*,
   583 F.2d 1110 (9th Cir. 1978) ............................................................................12

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985)..............................................6, 15, 16, 17, 18, 19, 20

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993)..........................................................................4, 10, 12, 22

*Mondry v. Am. Fam. Mut. Ins. Co.*,
   557 F.3d 781 (7th Cir. 2009) .......................................................................4, 6, 8

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992)...............................................................................................8

*Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*,
   No. 15-cv-351, 2015 WL 4225513 (E.D. Cal. July 10, 2015).............................17

*Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*,
   195 F.3d 975 (7th Cir. 1999) .........................................................................11, 13

*Randall v. Rolls-Royce Corp.*,
   637 F.3d 818 (7th Cir. 2011) ..............................................................................12

*Rochow v. Life Ins. Co. of N. Am.*,
   780 F.3d 364 (6th Cir. 2015) ................................................................................4

*Rose v. PSA Airlines, Inc.*,
   80 F.4th 488 (4th Cir. 2023) ...............................................................................12

*Sec'y of Lab. v. Macy's, Inc.*,
   No. 17-cv-541, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021) ....................1, 5, 6

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Shapiro v. Aetna, Inc.*,
   No. 22-cv-1958, 2023 WL 4348601 (D.N.J. June 5, 2023)....................14

*Smith v. Med. Benefit Adm'rs Grp., Inc.*,
   639 F.3d 277 (7th Cir. 2011) ..............................................15, 18

*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*,
   661 F. Supp. 2d 1076 (D. Ariz. 2009) ..............................15, 18, 19, 20

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996).........................................................3, 7, 8

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*
   865 F. Supp. 2d 1002 (C.D. Cal. 2011) .......................................18, 20

*Wit v. United Behavioral Health*,
   79 F.4th 1068 (9th Cir. 2023) ...............................................12

## STATUTES

28 U.S.C. § 1291 .................................................................13

28 U.S.C. § 1292(a)(1)...........................................................13

29 U.S.C. § 1109(a) .......................................................19, 21, 22

29 U.S.C. § 1132(a)(2)...........................................................21

29 U.S.C. § 1132(a)(3)...........................................................10

29 U.S.C. § 1132(a)(5)...........................................................10

29 U.S.C. § 1132(b)..............................................................10

29 U.S.C. § 1132(g)...............................................................6

29 U.S.C. § 1132(h)..............................................................10

29 U.S.C. § 1134(a) .............................................................2, 8

## OTHER AUTHORITIES

G. Bogert & G. Bogert, *Law of Trusts and Trustees* § 861 ......................12

Restatement (Second) of Contracts § 359(1) (1981) .............................13

Restatement (Second) of Contracts § 362 (1981) ...............................13

Restatement (Second) of Contracts § 364(1)(b) (1981)..........................13

Restatement (Second) of Contracts § 365 (1981) ...............................13

**TABLE OF AUTHORITIES**

*(continued)*

<u>Page(s)</u>

Restatement (Second) of Contracts § 366 (1981) ............................................................13

## INTRODUCTION

The Acting Secretary of Labor portrays the order she seeks—requiring Defendant UMR, Inc. to readjudicate *en masse* thousands of denials of benefits—as a well-established equitable remedy that is essential to her enforcement authority. But her opposition to UMR's motion to dismiss only confirms the opposite: Allowing the Acting Secretary to seek readjudication—an order typically reserved for individual suits by ERISA plan participants and beneficiaries seeking benefits due under their plans—would be an unprecedented expansion of her authority under ERISA §§ 502(a)(5) and (a)(2). She cites not one instance in which a traditional equity court has ever ordered a private party to "readjudicate" its own contractual obligation to pay money, and no precedent in which any court has allowed any Secretary of Labor to pursue such an order under ERISA. Indeed, the only ERISA case she cites in which any Secretary has ever even pursued anything similar, *Sec'y of Lab. v. Macy's, Inc.*, No. 17-cv-541, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021), rejected her authority and dismissed the suit.

The Acting Secretary's insistence that it is "common sense" that she has the authority she now asserts, Opp. 2, is undercut by the lack of precedent. This suit is hardly the first to accuse an ERISA claims administrator like UMR of "systematic" errors in denying claims for benefits. *Id.* at 12. And many previous Secretaries have had a similar policy interest in maximizing their enforcement authority. If the ability to seek readjudication of those denials—supposedly as an end in itself—were really an essential and common-sense component of the Acting Secretary's authority, surely she or her predecessors would have exercised that authority at least once in ERISA's nearly 50-year history. Instead, the Department of Labor has until now consistently left challenges to past benefits determinations to participants and beneficiaries, adhering to Congress's decision to limit benefits claims to those individual plaintiffs under ERISA § 502(a)(1)(B).

Congress's choice to leave retrospective benefits claims only to participants and beneficiaries makes perfect sense. Participants and beneficiaries have administrative remedies for benefits denials under their plans, and an adequate judicial remedy in § 502(a)(1)(B) if those administrative remedies fail. Congress facilitated participant and beneficiary enforcement suits by allowing prevailing parties to seek fees under § 502(g). And participants and beneficiaries are better positioned than the Acting Secretary to determine whether they were actually injured by a supposed error in benefit claims processing. By limiting the types of remedies the Acting Secretary may seek, Congress did not leave the Acting Secretary powerless to enforce ERISA and prevent violations. She retains the authority to investigate alleged violations, 29 U.S.C. § 1134(a), disclose them to the public to facilitate private litigation, *id.*, and seek forward-looking injunctive relief (none of which UMR's motion has challenged). Meanwhile, she also retains the authority under § 502(a)(2) to seek remedies for fiduciary breaches that actually harm plans, and authority under § 502(a)(5) to seek equitable relief for violations that other provisions *do not* remedy.

Ultimately, however, the scope of the Acting Secretary's authority to seek readjudication is not a question of policy, but of statutory interpretation. ERISA's text and the precedents construing it make clear that the Acting Secretary cannot use ERISA §§ 502(a)(5) or (a)(2) to bring claims challenging benefits determinations that Congress reserved for participants and beneficiaries in § 502(a)(1)(B). Because the Acting Secretary offers no persuasive argument to the contrary, this Court should grant UMR's motion and dismiss her claims for retrospective relief.

## ARGUMENT

**I.   The Court Should Dismiss The Claims For Retrospective Relief Under § 502(a)(5)**

    **A.   Equitable Relief Is Unavailable Because § 502(a)(1)(B) Provides An Adequate Remedy**

    **1.**   The Acting Secretary's main contention as to § 502(a)(5) is that under *Varity Corp. v. Howe*, 516 U.S. 489 (1996), she must have a remedy for all violations of ERISA, so "if section 502(a)(2) is unavailable" to her (as UMR contends, *see infra* at 15-22), she "may proceed under section 502(a)(5)'s catchall" instead.  Opp. 28.  But *Varity* is clear that the appropriateness of equitable relief under § 502(a)(5) turns on whether "§ 502 . . . elsewhere adequately remed[ies]" the "violation" at issue, 516 U.S. at 512—not on *who* may pursue that remedy.  In *Varity*, there was no suggestion that ERISA provided *any* legal remedy for the alleged violation to *anyone*— not just the plaintiffs—so the decision provides no support for a § 502(a)(5) claim where Congress granted a remedy to someone other than the plaintiff.

    Here, the Acting Secretary does not seriously dispute that participants and beneficiaries have a remedy under § 502(a)(1)(B) for each of the violations she alleges, and that upon sufficient proof they may obtain an order requiring readjudication of unlawful denials of benefits as a step towards recovering benefits due under their plans.  It is settled precedent, moreover, that "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un* available" to

3

participants, beneficiaries, and fiduciaries "under subsection (a)(3)." *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009).[1]

The Acting Secretary is thus left to argue that *her* remedies should be broader under § 502(a)(5), which she concedes is "nearly identical" to § 502(a)(3). Opp. 7, 25. But she makes no attempt to reconcile that position with either: (1) the "'normal rule of statutory construction' that 'identical words used in different parts of the same act are intended to have the same meaning,'" *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (citation omitted); or (2) the Supreme Court's consequent recognition that "appropriate equitable relief" in § 502(a)(5) must have "the same meaning as the same language" in § 502(a)(3), *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260 (1993). These textual principles compel the conclusion that readjudication is no more "appropriate" relief under § 502(a)(5) than it is under § 502(a)(3).

Contrary to the Acting Secretary's arguments, § 502(a)(1)(B) is not an inadequate remedy simply because *she* is "unable to bring claims under [that] section" personally. Opp. 28. To the contrary, the fact that the Acting Secretary "ha[s] no cause of action under section 502(a)(1)(B)" cuts the other way: To allow her to pursue under § 502(a)(5) a denial of benefits claim that

---

[1]   The Acting Secretary is wrong that *Mondry* merely "assum[ed] without deciding" these principles. Opp. 26. *Mondry* expressly declined to "depart from the holdings" of the "majority of the circuits" that "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un*available under subsection (a)(3)." 557 F.3d at 805. The court then relied on that principle in affirming dismissal of § 502(a)(3) claims seeking reimbursement under an ERISA plan. *Id.* at 804-05. The Acting Secretary's own cases, moreover, confirm that the principles recognized in *Mondry* are the law of this Circuit. She quotes out of context this Court's statement in *Crista v. Wisconsin Physicians Service Insurance Corp.*, No. 18-cv-365, 2021 WL 3511092 (W.D. Wis. Aug. 10, 2021), that in some circumstances "a beneficiary could bring concurrent § 502(a)(1)(B) and § 502(a)(3) claims." Opp. 28. But she omits that, just sentences later, *Crista* described the "limitations of such a strategy" in terms that echo *Mondry*: § 502(a)(1)(B) and § 502(a)(3) claims may be brought simultaneously "'only where the breach of fiduciary duty claim [under § 502(a)(3)] is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate.'" 2021 WL 3511092, at *18 (quoting *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015) (en banc)).

Congress in § 502(a)(1)(B) intentionally made available *only* to participants and beneficiaries "would render meaningless [her] omission" from "section 502(a)(1)(B)." *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714-15 (4th Cir. 1996). By naming the Secretary as a party that can bring suit under some provisions of § 502(a), but omitting the Secretary from the list of proper plaintiffs under § 502(a)(1)(B), Congress could not have been clearer that it did not intend to authorize the Secretary to bring the claims described under § 502(a)(1)(B)—namely, denied benefit claims. To hold otherwise would flout the "general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (quotation marks omitted).

The Acting Secretary's argument is precisely the one rejected in *Coyne* and *Secretary of Labor v. Macy's, Inc.*, No. 17-cv-541, 2021 WL 5359769, at *10-11 (S.D. Ohio Nov. 17, 2021). *Coyne* held that a plan sponsor could not use § 502(a)(3) to challenge benefits determinations, even though—and indeed precisely *because*—the plan sponsor was not among the parties authorized to bring benefits claims under § 502(a)(1)(B). 102 F.3d at 714-15. And *Macy's*—the only prior case either party has cited where any Secretary of Labor has attempted to challenge benefit denials under § 502(a)(5)—made the same point in dismissing the Secretary's claims. The Acting Secretary notes that *Macy's* "acknowledged" that § 502(a)(5) is different from § 502(a)(3) "because the Acting Secretary does not have authority to bring section 502(a)(1)(B) claims for benefits." Opp. 28. But she omits that the court ultimately *rejected* this distinction as both "overstate[d]"—because plan participants can bring reprocessing claims—and "outweigh[ed]" by "the substantial identity of the statutory text between" § 502(a)(3) and § 502(a)(5). 2021 WL

5359769, at *11.  The Acting Secretary's failure to address *Coyne* or attempt to distinguish *Macy's* is thus fatal to her argument.

**2.**      Nor is the Acting Secretary correct that relief under § 502(a)(1)(B) "is not an 'adequate remedy'" simply because she alleges multiple violations and not "every affected participant" has sued.  Opp. 31 (alteration omitted).  What matters is whether adequate relief is "available," *Mondry*, 557 F.3d at 805, not whether it has been pursued.  Congress chose to address the "ris[k]" of "underenforcement of beneficiaries' statutory rights" by "authoriz[ing] the award of attorney's fees" to prevailing plaintiffs, *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (citing 29 U.S.C. § 1132(g))—not by allowing the Secretary to seek benefits on plan beneficiaries' behalf.

That some beneficiaries might nonetheless *choose* not to exercise their individual right to sue in all instances is precisely the point.  The Acting Secretary does not contest that many beneficiaries may have suffered no injury from the conduct she alleges—either because coverage may have been denied even under the Acting Secretary's preferred standard, *see Berceanu v. UMR, Inc.*, No. 19-cv-568, 2023 WL 1927693, at *7-9 (W.D. Wis. Feb. 10, 2023), or because they were not balance billed and would owe *more* in coinsurance or deductible payments had UMR approved coverage for the treatment, Mot. 16-17.  Individual participants and beneficiaries are thus better situated than the Acting Secretary to determine whether the readjudication she seeks here is desirable relief.  Requiring UMR to nonetheless incur the "cost of complying" with readjudication of thousands of coverage denials *en masse* is "not 'appropriate'" where "[i]t is quite possible that some—perhaps many"—of affected participants and beneficiaries are not owed anything and thus have already been "fully compensated" for all covered treatment.  *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892-93 (7th Cir. 2011).  And that is especially true where none of

those affected has even chosen to sue.  Allowing the Acting Secretary to pursue thousands of readjudications that no individual beneficiary is seeking—in support of the pursuit of benefits that ultimately may not be owed to anyone under the applicable plan terms—is the diametric opposite of the "efficien[cy]" that she claims warrants her intervention.  Opp. 31.

The Complaint's allegations that denial notices were not specific enough to satisfy the claims procedures regulations do not limit the availability of relief under § 502(a)(1)(B).  The Acting Secretary's assertion that these allegedly inadequate notices somehow "obscur[ed]" UMR's other alleged violations in denying coverage, Opp. 31, appears nowhere in the Complaint. But even if that were the case, participants, beneficiaries, and the Acting Secretary would each have ample remedies under ERISA without the Acting Secretary needing to usurp participants' and beneficiaries' exclusive statutory right under § 502(a)(1)(B) to challenge benefits determinations.  If a participant is not satisfied that his claim was validly denied based on the information the plan administrator has given, he can sue under § 502(a)(1)(B).[2]  He also can seek more information through his plan's administrative review process, but if the denial notice he received does not suffice under the claims procedures regulations, he does not have to do so, because a procedural violation excuses the participant's failure to administratively exhaust his claim and allows "immediate access to judicial review for the participant." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 112 (2013) (explaining that waiver of exhaustion addresses even instances where "administrators . . . attempt to prevent judicial review . . . in bad faith"). Meanwhile, ERISA expressly authorizes the Acting Secretary—in addition to seeking forward-

---

[2]   This is true even if, as the Acting Secretary stresses (at 29-30), procedural violations can be characterized as fiduciary breaches, since § 502(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the . . . the payment of claims," *Varity*, 516 U.S. at 512. The Acting Secretary thus concedes that procedural violations are remediable through § 502(a)(1)(B).  Opp. 29-30.

looking relief—to conduct an investigation of any violations and alert participants and beneficiaries about any substantive ERISA violations revealed so they may decide whether to pursue relief under § 502(a)(1)(B).  29 U.S.C. § 1134(a).

The Acting Secretary's supposedly "'separate and distinct interest'" in enforcing ERISA, Opp. 32, does not change this analysis.  At the outset, the Acting Secretary cannot credibly maintain that additional authority is necessary to vindicate her unique national interests when she cites no evidence that she or her predecessors have *ever* successfully exercised that authority in ERISA's nearly 50-year history.  Further, whether relief is "appropriate" under §§ 502(a)(3) and (a)(5) turns on whether specific "injuries caused by violations" can be remedied through another cause of action in § 502, not on what interest the Secretary may have in remedying those injuries.  *Varity*, 516 U.S. at 512.  Plan sponsors, for example, have distinct interests from participants and beneficiaries, but that does not mean they can sue under § 502(a)(2) to remedy benefits denials.  *See Coyne*, 102 F.3d at 714-15.  That is a straightforward application of the "basic doctrine of equity jurisprudence that courts of equity should not act" where there is "an adequate remedy at law" and "irreparable injury" will not result if equitable relief is not provided.  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (quotation marks omitted).  The only injuries alleged by the Acting Secretary are denials of benefits supposedly due to participants and beneficiaries under their plans—injuries for which Congress provided a specific cause of action.  *See supra* at 4-5.  Because "relief is available to a plan participant under subsection (a)(1)(B)," *Mondry*, 557 F.3d at 805, it is unavailable under § 502(a)(5).  Any other conclusion would thus undermine Congress's decision to limit benefit claims to § 502(a)(1)(B) and eviscerate ERISA's carefully balanced remedial structure.

The cases the Acting Secretary cites (at 32) are not to the contrary. Rather, they merely recognize that her separate interests in enforcing ERISA mean that she is not in strict "privity" with private plaintiffs and cannot be barred by their actions from pursuing her own statutory remedies. *E.g.*, *Herman v. S.C. Nat'l Bank*, 140 F.3d 1413, 1424 (11th Cir. 1998) (Secretary was not "'in privity'" with private litigants or bound by their settlement "because the Secretary was not a party to the . . . settlement and has national public interests separate and distinct from those of the . . . private litigants"). The issue here—whether Congress has provided the Acting Secretary with such a remedy in the first instance—is distinct, and not addressed by these cases.

To be clear, UMR's position does not "gut the enforcement authority Congress vested in the Secretary," as the Acting Secretary charges. Opp. 27. UMR's motion does not even address the Acting Secretary's prospective claims, which she herself describes as seeking "broad forms of relief," including "requiring UMR to reform its procedures for adjudicating ER and UDS Claims to comply with ERISA, and to enjoin UMR from committing future violations." Opp. 10 (citing Compl. at 17). Nor does UMR's position (or the substantial case law which UMR has cited) prevent the Acting Secretary from pursuing claims that could not be brought under § 502(a)(1)(B). What she cannot do is use § 502(a)(5) to obtain a retrospective remedy for benefits denials that Congress expressly reserved for participants and beneficiaries under § 502(a)(1)(B) and expressly declined to provide to the Acting Secretary.[3]

3.      Finally, the Acting Secretary is not helped by "textual difference[s]" between § 502(a)(3) and § 502(a)(5). Opp. 33-34. The operative phrase in both provisions—"appropriate

---

[3]     The Acting Secretary asserts without citation that UMR has not challenged her ability to "bring her claims alleging failure to comply with ERISA § 715 and its implementing regulations." Opp. 30 n.5. But UMR *has* challenged those claims insofar as they seek backward-looking relief, explaining that disputes regarding UMR's application of the standard for adjudicating emergency room benefits claims can be brought under § 502(a)(1)(B). Mot. 1, 8, 12.

equitable relief"—is the "same," so the Supreme Court has already determined that it must have the "same meaning." *Mertens*, 508 U.S. at 260. If anything, the minor differences between the provisions cut *against* allowing the Acting Secretary to challenge benefits determinations, given that: (1) Congress deliberately omitted from § 502(a)(5) the power to "enforce . . . the terms of the plan" that Congress granted to participants, beneficiaries, and fiduciaries under § 502(a)(3), 29 U.S.C. §§ 1132(a)(3), (a)(5); Mot. 15; and (2) Congress in § 502(h) expressly required notice to the Acting Secretary of any ERISA suit by a participant, beneficiary, or fiduciary *except* an action "under subsection (a)(1)(B) . . . for the purpose of recovering benefits due," 29 U.S.C. § 1132(h). Congress thus made especially clear that it did not anticipate a role for the Acting Secretary in challenging benefits determinations.

That § 502(a)(5) also carves out an additional limitation on the Acting Secretary for certain narrow categories of claims described in § 502(b)—for example, relating to vesting, funding, and participation in certain retirement plans governed by the Internal Revenue Code, 29 U.S.C. §§ 1132(a)(5), (b)—does not mean this exception is the *only* "limitatio[n]" on § 502(a)(5) relief. Opp. 33-34. To the contrary, § 502(a)(5) is clear that the Acting Secretary may seek only relief that is "appropriate" and "equitable." 29 U.S.C. § 1132(a)(5). Construing those *express* limitations consistently with their meaning in § 502(a)(3) does not amount to reading "unenumerated limitations" into the statute. Opp. 33-34. It is simply a matter of giving the proper effect to the limitations that Congress itself enumerated.

### B.   Readjudication Is Unavailable Because It Is Not A Traditional Equitable Remedy

Even if the Acting Secretary were not barred from seeking relief for benefit denials under § 502(a)(5), the purported "remed[y]" she seeks—readjudication—is not "appropriate equitable relief" under § 502(a)(5) because it is not a "categor[y] of relief that [was] *typically* available in

equity." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citation omitted). The Acting Secretary nowhere disputes that Seventh Circuit case law authorizing readjudication in ERISA cases grounds that authority in an analogy to statutory remand remedies under the Social Security Act and the Federal Arbitration Act, rather than any analogy to historical equitable remedies. *See* Mot. 18-19 (citing *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 978-80 (7th Cir. 1999)). She nonetheless maintains that readjudication *also* qualifies as a "traditional equitable remedy" because it is "akin to" an "injunction" or "specific performance." Opp. 18-22.

The problem for the Acting Secretary is that she fails to cite a single instance in which any traditional equity court has ever entered a similar injunction or specific performance order compelling a private party to "readjudicate" its own contractual obligation to pay money. Her historical authorities for the propositions that "'injunction is inherently an equitable remedy'" and "specific performance" is "a quintessential equitable remedy," Opp. 18-20, say not a wit about readjudication, reprocessing, or any similar type of order. And for good reason: Readjudicating a contractual right to payment is not an end in itself, but rather a step towards payment of those benefits. Mot. 18-19. Any error in adjudication is therefore entirely remediable by money damages in the amount of the payment, making equitable relief unavailable. *See, e.g.*, *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). It would have made no sense for a court of equity to order readjudication, so the absence of precedent is unsurprising. Further, treating readjudication as an equitable remedy would eviscerate the well-established restriction on "injunction[s] to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation," *Great-W.*, 534 U.S. at 210-11, since virtually *every* claim for

nonpayment of a disputed contractual debt could be reframed as seeking an order to compel the defendant to retrospectively reevaluate what they owe.[4]

The Acting Secretary's analogy to an injunction is squarely foreclosed by precedent. She has no response at all to the multiple Seventh Circuit decisions (cited at Mot. 19) recognizing that the type of readjudication she seeks "cannot satisfy the basic requirements for an injunction" because the underlying "injury . . . is easily remedied by an award of money damages." *Kartman*, 634 F.3d at 892; *see also Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 826 (7th Cir. 2011). Further, "injunctive relief looks to the future," *Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965), and cannot be used to address "past violations," *Loya v. INS*, 583 F.2d 1110, 1114 (9th Cir. 1978). Because the Acting Secretary concedes that the readjudication she seeks is "[r]etrospectiv[e]" in nature, Opp. 10, it cannot be considered an injunction.

Indeed, the Acting Secretary's analogy to injunctive relief is precisely the argument the Ninth Circuit rejected in *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023). The plaintiffs there argued that "reprocessing" is "equitable relief"—rather than a step towards "an award of money damages"—because it is comparable to "an injunction directing [defendant] to decide whether to approve a claim using the right standard." *Wit*, No. 20-17363, Dkt. 81, at 46-47 n.15 (citation omitted). But the Ninth Circuit disagreed, concluding that this argument failed to "sho[w] how a 'reprocesssing' remedy constitutes relief that was typically available in equity." 58 F.4th at 1095. Rather than "simply faulting plaintiffs . . . for failing" to "undertake any analysis

---

[4]   The Acting Secretary's citation to a treatise on trusts to define traditional equitable relief, Opp. 20 (citing G. Bogert & G. Bogert, *Law of Trusts and Trustees* § 861), is also inappropriate because the Supreme Court has characterized trust remedies as "'purely legal'" relief, and thus irrelevant to the "outer bounds of 'equitable relief,'" *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 500 (4th Cir. 2023) (citing *Mertens*, 508 U.S. at 256).

as to whether reprocessing could be analogized to a remedy available at equity," Opp. 19 n.3, the

Ninth Circuit considered and rejected the precise argument that the Acting Secretary makes here.[5]

The Acting Secretary's analogy to specific performance fails for the same reasons, and

others.  Like an injunction, a plaintiff seeking specific performance must show that "damages

would be [in]adequate to protect the expectation interest of the injured party."  Restatement

(Second) of Contracts § 359(1) (1981).  And the requirements for specific performance are even

more onerous because the plaintiff also must show that "the terms of the contract are sufficiently

certain to provide a basis for an appropriate order"; "the relief would [not] cause unreasonable

hardship or loss to the party in breach or to third persons"; "the character and magnitude of the

performance would impose on the court burdens in enforcement or supervision that are

disproportionate to the advantages to be gained from enforcement and to the harm to be suffered

from its denial"; and "the use of compulsion is [not] contrary to public policy."  *Id.* §§ 362,

364(1)(b), 365-366.  The Complaint pleads none of these elements.  And the Acting Secretary

identifies no operative, definite provision of any ERISA plan that would be "performed" by

readjudicating claims for benefits.  Instead, the plan provisions cited in the Complaint merely

define the benefits that UMR's plan sponsors have agreed to *pay*.  Compl. ¶¶ 26-28, 54-55, 63.

The Acting Secretary has thus failed to adequately allege any contractual duty beyond the

obligation to pay benefits due.  And *that* obligation cannot be subject to specific performance given

the limitations on specific performance to compel payment.  *Great-W.*, 534 U.S. at 210-12.

---

[5]    Moreover, if readjudication were an injunction, it would be immediately appealable under either 28 U.S.C. §§ 1291 (final judgments) or 1292(a)(1) (preliminary injunctions), but *Perlman* confirms that some readjudication orders are not appealable, 195 F.3d at 978-80; *see* Mot. 19.  The Acting Secretary argues that the order she seeks would be appealable and that *Perlman* did not address preliminary injunctions.  But that ignores the reasoning of *Perlman*, which shows that readjudication as a class of "remedy" is not always appealable and thus cannot be an injunction.

None of the cases cited by the Acting Secretary provide any support for her comparison of readjudication to an injunction or specific performance.  This Court's passing description of "reprocessing" as a "preliminary injunction" in *Berceanu*, 2023 WL 1927693, at *7, for example, is not dispositive because the decision did not evaluate whether readjudication is an equitable remedy.  Instead, the Court merely observed in *dicta* that reprocessing could "provide effective relief" in "some cases," before concluding that it was not an appropriate remedy in the case at bar. *Id.*  Meanwhile, the sole case the Acting Secretary cites that found reprocessing to be "appropriate . . . equitable relief," *Shapiro v. Aetna, Inc.*, No. 22-cv-1958, 2023 WL 4348601, at *7 (D.N.J. June 5, 2023), cites no authority for that proposition other than an equally inapposite decision— *DeMaria v. Horizon Healthcare Services, Inc.*—that also did not address the issue and did not even mention the word "equitable," much less support the proposition for which it is cited, No. 11-cv-7298, 2015 WL 3460997, at *5 (D.N.J. June 1, 2015).  Moreover, the plaintiffs in *Shapiro* had not "clearly allege[d]" whether they were seeking readjudication under § 502(a)(1)(B) or § 502(a)(3), and defendants had not challenged "the appropriateness" of readjudication under § 502(a)(1)(B).  2023 WL 4348601, at *6-7.

The Acting Secretary's argument that *some* "statutory" remedies may also "qualif[y] as 'equitable relief'" "if [they] w[ere] typically available at equity," Opp. 22, is thus unavailing.  Even if that were so in theory, it is irrelevant here because the Secretary has not shown that readjudication was "typically available at equity." *Id.*  Simply put, "the relief now provided by § 502(a)(1)(B)" has not been "traditionally considered equitable," *Cigna Corp. v. Amara*, 563 U.S. 421, 440 (2011), and readjudication is no exception.

II.   **The Court Should Dismiss The Claims For Retrospective Relief Under § 502(a)(2)**

A.   **Section 502(a)(2) Does Not Apply Because The Complaint Does Not Seek Relief On Behalf Of Any Plan**

The Acting Secretary's arguments fare no better under § 502(a)(2).  She concedes at the outset that, under *Russell*, § 502(a)(2) "is intended to provide relief 'singularly to the plan,'" rather than to participants.  Opp. 12 (quoting *Russell*, 473 U.S. at 142-43).  She also agrees that "Congress intended . . . to provide 'plan-related relief,' meaning 'remedies that would protect the entire plan, rather than . . . the rights of an individual.'"  Opp. 14 (quoting *Russell*, 473 U.S. at 142).  She nonetheless stakes her defense of her § 502(a)(2) claims on the proposition that "a financial loss to an ERISA plan is *not* required to bring a claim under section 502(a)(2)."  Opp. 13-14.  Given that legal position, the Acting Secretary never attempts to establish that ERISA plans at issue here have suffered *any* injury or loss, financial or otherwise.

The Acting Secretary's failure to identify any injury to any plan is fatal to her § 502(a)(2) claims because her position that no such injury is required is squarely foreclosed by longstanding precedent.  But even if she were correct, her claims would still fail because the remedy she seeks would exclusively benefit participants and beneficiaries, not their plans.  For both reasons, her § 502(a)(2) claims should be dismissed.

1.   That §§ 502(a)(2) and 409 require proof of injury to a plan is well established.  The Seventh Circuit has stated unambiguously that a plaintiff who "has identified no injury to the plan . . . has no viable claim for relief under section 502(a)(2)."  *Smith v. Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 283 (7th Cir. 2011).  The Acting Secretary has no response to *Smith*.  And even her own authorities repeatedly confirm the same requirement:  Because § 502(a)(2) is "designed to redress a breach of fiduciary duty that has harmed a plan," it "'only allows recovery for injury to the plan itself,' not for injury to a beneficiary or a class of beneficiaries."  *Spinedex Physical*

15

*Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 661 F. Supp. 2d 1076, 1091 (D. Ariz. 2009) (quoting *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1445 (9th Cir. 1995)); *see also*, *e.g.*, *Chesemore v. All. Holdings, Inc.*, 948 F. Supp. 2d 928, 940 (W.D. Wis. 2013) (Section 502(a)(2) serves to "make the injured plan whole").

The Acting Secretary's contrary argument rests mainly on a single, hypothetical sentence from *Russell*, plucked from out of context, which she acknowledges is dictum. Opp. 14 n.2. In a paragraph addressing other remedies that the respondent in that case might have sought if denied a remedy under § 502(a)(2), the Supreme Court speculated as follows: "If the plan administrator's refusal to pay contractually authorized benefits had been willful and part of a larger systematic breach of fiduciary obligations, respondent in this hypothetical could have asked for removal of the fiduciary pursuant to §§ 502(a)(2) and 409." *Russell*, 473 U.S. at 147. That remedy would make perfect sense if, for example, the plan administrator had systematically stripped the plan of assets, leaving nothing to pay the benefits due. But the Court nowhere suggested that *any* and *every* claim alleging *any* systematic breach whatsoever would be actionable under § 502(a)(2) irrespective of whether the plan was injured. That question simply was not presented. And the Court said only that the respondent "could have asked" for relief, not that she would have prevailed without satisfying any other requirement. *Id.* To read that sentence any other way would clash with *Russell*'s recognition—never addressed by the Acting Secretary—that §§ 409 and 502 provide for a fiduciary's personal liability only "'to [the] plan.'" *Id.* at 140; *see* Mot. 21.

Other courts have thus refused to read the *Russell* hypothetical in the manner advocated by the Acting Secretary. In *Cromwell v. Kaiser Foundation Health Plan*, for example, a plaintiff brought suit under § 502(a)(2), alleging an unlawful change to the terms of her health plan. No. 18-cv-6187, 2019 WL 1493337, at *1 (N.D. Cal. Apr. 4, 2019). The court rejected the plaintiff's

16

attempt "to equate injury to the plan with the loss of adequate provision of benefits," explaining that "[t]he focus under [§ 502(a)(2)] is injury to the plan, not denial of plan benefits to *plan beneficiaries*." *Id.* at *5-6 (emphasis in original).  In so doing, the court rejected plaintiff's claim that "mere benefit denials—not normally actionable as breaches of fiduciary duty—become actionable under [§ 502(a)(2)] for the benefit of the plan as a whole, when the fiduciaries' violations are 'willful' and 'systematic.'" *Id.* (quoting *Russell*, 473 U.S. at 147).  Relying on the "well-established case law that a [§ 502(a)(2)] claim for breach of fiduciary duty pursuant to [§ 409] requires an injury to the plan" as well as the plaintiff's failure to seek removal of the fiduciary, the court rejected this understanding of *Russell*.  *Id.*  Other district court decisions have similarly rejected the Acting Secretary's contorted reading of *Russell*.[6]

Far from undercutting a plan-loss requirement, the Acting Secretary's remaining cases allowing § 502(a)(2) claims to proceed overwhelmingly did so only upon finding an injury to the plan—but none of the injuries alleged in those cases is alleged or supported here.  *Chesemore* concerned "'fiduciary breaches that impair the value of plan assets in a participant's individual account' within a defined contribution plan," 948 F. Supp. 2d at 945 n.18—the precise type of claim that the Supreme Court addressed in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S.

---

[6]    *See, e.g.*, *Ehrman v. Standard Ins. Co.*, No. 06-cv-5454, 2007 WL 1288465, at *2 (N.D. Cal. May 2, 2007) (rejecting § 502(a)(2) claim, explaining that "[t]hough [p]laintiff newly alleges that these wrongful actions were 'systematic', 'repeated,' and 'willful,' and alleges in conclusory fashion that the removal of [defendant] as the fiduciary would benefit the Plan as a whole—the underlying wrongful acts that [p]laintiff alleges all concern the underpayment of benefits to individual participants—conduct that affects, at best, only a subset of plan participants" (alterations and citations omitted)); *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, No. 15-cv-351, 2015 WL 4225513, at *4 (E.D. Cal. July 10, 2015) ("Simply using the words 'systematic' or 'willful' in the Complaint does not change the fact that [p]laintiffs' [§ 502(a)(2)] claim is ultimately based on CIGNA's denial of benefits for individual participants."); *LaSpina v. Anthem Blue Cross Life & Health Ins. Co.*, No. 12-cv-707, 2012 WL 3638709, at *1 (D. Ariz. Aug. 23, 2012) (no injury to plan where plaintiffs alleged that defendants' systematic denial of benefits for a certain type of autism treatment).

17

248, 256 (2008), and the Seventh Circuit distinguished from claims under "group health insurance plan[s]" in *Smith*, 639 F.3d at 283.  In *Spinedex*, the plaintiffs alleged that under the relevant plans' specific terms, unpaid health benefits "became Plan assets" that the defendant "converted."  661 F. Supp. 2d at 1092.  The district court called this theory "novel," but allowed it to proceed at the motion to dismiss stage because it was "not conclusory" and "neither party [had] sufficiently briefed the issue."  *Id.*  And in *Armijo v. ILWU-PMA Welfare Plan*, the court certified a class action for a § 502(a)(2) claim on the premise that the defendants' alleged breach of fiduciary duty "harmed the Plan as a whole by, among other things, causing providers to 'no longer provide medical services to Plan participants and beneficiaries.'"  No. 15-cv-1403, 2017 WL 10718576, at *5 (C.D. Cal. Aug. 1, 2017) (alterations omitted).  This action, by contrast, does not involve a defined contribution plan, and the Acting Secretary has not alleged either that unpaid benefits become plan assets or that UMR's conduct causes providers to cease serving the relevant plans.  As a result, none of these cases establish the requisite injury to the plan here.[7]

   2.    Even if the Acting Secretary were correct that she need not show injury to plans, her argument would still fail because, as she concedes, "section 502(a)(2) is intended to provide relief 'singularly to the plan' for fiduciary violations as opposed to 'an individual beneficiary.'"  Opp. 12 (quoting *Russell*, 473 U.S. at 142-43).  The retrospective order the Acting Secretary seeks here, however—readjudication of claims—is not relief for *the plan*; instead, it is an effort to recover on behalf of participants and beneficiaries.  Far from benefiting the plan itself in any way, the Acting Secretary does not dispute that reversing coverage denials would *increase* the costs to

---

[7]    The sole outlier, *In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*, found it sufficient at the motion to dismiss stage that the supposed scheme "allegedly injure[d] all plan subscribers by forcing them to pay more for [out-of-network] medical services," but described that theory of injury as "novel" and never attempted to reconcile it with *Russell*'s plan-injury requirement.  865 F. Supp. 2d 1002, 1043-44 (C.D. Cal. 2011).

plans, because they are all self-funded and are therefore ultimately responsible for paying any claims that UMR approves.  Mot. 23.

Readjudication is thus wholly unlike the remedies sought in any of the cases cited by the Acting Secretary, all of which would accrue directly to the plan itself, with at best *incidental* benefits to participants and beneficiaries.  In *Chesemore*, for example, the plaintiffs sought to recover plan assets, 948 F. Supp. 2d at 940-41—one of the remedies expressly authorized by § 409. *See* 29 U.S.C. § 1109(a) (fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach"); *LaRue*, 552 U.S. at 256 (explaining that § 502(a)(2) provides relief on behalf of a defined-contribution plan when "a fiduciary breach *diminishes plan assets*" (emphasis added)).  *Russell*, meanwhile, suggests the remedy for "systematic breach[es]" would be "removal of the fiduciary," 473 U.S. at 147—another remedy expressly enumerated in § 409, which *Russell* characterized as an example of "the kind of 'plan-related' relief" that statute provides, *id.* at 142.  The plaintiffs in *Armijo* likewise sought to "remov[e]" fiduciaries.  2017 WL 10718576, at *5.

*Spinedex* and *WellPoint*, meanwhile, each involved forward-looking injunctive relief, which UMR is not challenging here.  Indeed, *Spinedex* expressly distinguished retrospective claims for benefits, explaining that "[s]uits by individuals or classes of individuals to compel payment of improperly denied claims or adherence to plan obligations do not" sufficiently "allege an injury and a remedy corresponding to a plan," and are therefore not properly brought under § 502(a)(2).  661 F. Supp. 2d at 1091; *see also id.* at 1093 (distinguishing *Cinelli*, 61 F.3d at 1445; *Huntsinger v. Shaw Grp., Inc.,* 410 F. Supp. 2d 968, 974-75 (D. Or. 2006); and *Ehrman*, 2007 WL 1288465, at *2).  The court emphasized that the plaintiffs there were not seeking that relief, and that the "remedies" they "requested" instead—"injunctive relief to prevent the United Defendants

from serving as Plan administrators and fiduciaries or, in the alternative, compel them to honor the terms of the Plans"—"bolster[ed] the argument that [they], at least in part, s[ought] to redress harms inflicted upon the Plans." *Id.* at 1093. *WellPoint* similarly held the plaintiffs' § 502(a)(2) claims were proper because "although Plaintiffs seek monetary relief for their individual breach of fiduciary duties claims, they also seek injunctive relief which would 'inure to the benefit' of the plan and not only the individual Plaintiffs." 865 F. Supp. 2d at 1044.[8]

The Acting Secretary thus cites no case holding that readjudication or anything like it benefits an ERISA plan (as opposed to its participants and beneficiaries), and she never explains how that would be so. Instead, she simply argues vaguely that the order she seeks is "plan-related," plucking that phrase out of context from *Russell*. Opp. 24. But *Russell* does not hold that any remedy that can be described as "plan-related" in any sense of that term is available under §§ 502(a)(2) and 409. Instead, it uses the phrase "plan-related" as shorthand for relief "for the plan itself"—*i.e.*, "remedies that would protect the entire plan." 473 U.S. at 142, 144. It therefore is not enough for the Acting Secretary to characterize the order she seeks as involving "fiduciary conduct" or requiring the fiduciary to do what "it should have done in the first instance." Opp. 24. What matters is whether the order will "inure[] to the benefit of the plan as a whole," as opposed to its beneficiaries. *Russell*, 473 U.S. at 140. Because the Acting Secretary has not made that showing, her § 502(a)(2) claims for readjudication must be dismissed.

## B.  Relief Is Also Unavailable For The Same Reasons Relief Is Unavailable For The Acting Secretary's Retrospective § 502(a)(5) Claims

Finally, even if the Court disagrees with UMR's reading of *Russell*, the Acting Secretary's retrospective claims under § 502(a)(2) still fail for the same reasons as under § 502(a)(5):

---

[8] This statement cannot be read as endorsing "individual" claims for "monetary relief," because the court merely determined that the plaintiffs had stated a claim under § 502(a)(2). *WellPoint*, 865 F. Supp. 2d at 1044. It nowhere held that monetary relief would be available on that claim.

Adequate relief is available to participants and beneficiaries under § 502(a)(1)(B); and readjudication is not a traditional remedy.

1.      Section 502(a)(2) allows the Acting Secretary to seek "*appropriate* relief under [ERISA § 409]," 29 U.S.C. § 1132(a)(2) (emphasis added), and § 409, in turn—like §§ 502(a)(3) and (a)(5)—provides for "other equitable or remedial relief as the court may deem *appropriate*," *id.* § 1109(a) (emphasis added).  The Acting Secretary does not dispute that §§ 502(a)(2) and 409 should be read consistently with §§ 502(a)(3) and (a)(5), as Chief Justice Roberts has suggested. *See LaRue*, 552 U.S. at 258 (concurring in part and concurring in the judgment).  Thus, because an adequate remedy is available under § 502(a)(1)(B), readjudication is not "appropriate" under §§ 502(a)(2) and 409.  *See Coyne*, 102 F.3d at 715; *Burns v. Orthotek Inc. Emps. Pension Plan & Tr.*, No. 08-cv-190, 2009 WL 631245, at *4 (N.D. Ind. Mar. 11, 2009).

2.      The Acting Secretary's retrospective claims also fail under § 502(a)(2) because readjudication is not a traditional form of "equitable or remedial" relief.  29 U.S.C. § 1109(a).

As to "equitable" relief, the Acting Secretary does not dispute that the standard is the same as under § 502(a)(5).  UMR has already explained, *supra* at 10-14, why readjudication is not a traditional equitable remedy under § 502(a)(5).  The same is true under §§ 502(a)(2) and 409.

As to "remedial" relief—which is available under §§ 502(a)(2) and 409, but not § 502(a)(5)—the Acting Secretary's arguments (at 17) are cursory and come nowhere near showing that readjudication falls within that category.  The parties mainly disagree about what "appropriate remedial relief" means.  But the Acting Secretary's expansive interpretation of that phrase to mean any relief that "relieve[s] or redress[es]," *id.*, is untenable.  To start, it would read the word "remedial" out of the statute, violating the "basic interpretive cano[n]" that "a statute should be construed . . . so that no part will be inoperative or superfluous." *Corley v. United States*,

556 U.S. 303, 314 (2009) (alteration and quotation marks omitted).  If "remedial relief" includes all relief—*i.e.*, anything that "relieve[s]," Opp. 17—then "remedial" "add[s] nothing."  *Corley*, 556 U.S. at 314.  That interpretation would also improperly "deprive of all meaning the distinction Congress drew between 'equitable' and 'remedial' relief" by collapsing all equitable relief into the expanded definition of remedial relief, contrary to *Mertens*, 508 U.S. at 258.  To preserve that distinction, the Court explained that "'[e]quitable' relief must mean *something* less than *all* relief." *Id.* at 258 n.8.  The same is true of "remedial relief."

UMR has never disputed that "remedial relief" must also mean "something other than 'equitable . . . relief.'"  Opp. 17.  Indeed, UMR's interpretation of "remedial relief," drawn from *Mertens*, does just that:  As the context of § 409 makes clear, "remedial relief" means "relief available for breach of trust at common law," and such relief is distinct from "equitable relief." *Mertens*, 508 U.S. at 254, 258; *see* Mot. 24.  That is the only definition offered by either party that gives effect to every word in the statute.  And the Acting Secretary has no response to that definition beyond offering her own, untenable alternative.  Because she also makes no effort at all to show that her request for readjudication falls within that category, that request cannot qualify as "appropriate" "remedial relief."  29 U.S.C. § 1109(a).  Readjudication is thus unavailable under § 502(a)(2).

## CONCLUSION

For the reasons set forth above, the Court should grant UMR's motion to dismiss in part.

DATE:  November 6, 2023                    Respectfully submitted,


                                           GEOFFREY M. SIGLER
                                           MATTHEW S. ROZEN
                                           ANDREW G.I. KILBERG
                                           GIBSON, DUNN & CRUTCHER LLP
                                           1050 Connecticut Ave. NW
                                           Washington, DC 20036
                                           Tel: (202) 955-8500
                                           gsigler@gibsondunn.com
                                           mrozen@gibsondunn.com
                                           akilberg@gibsondunn.com

                                           s/ Kevin M. St. John
                                           KEVIN ST. JOHN
                                           BELL GIFTOS ST. JOHN LLC
                                           5325 Wall Street, Suite 2200
                                           Madison, WI 53718
                                           Tel: (608) 216-7990
                                           kstjohn@bellgiftos.com

                                           *Counsel for Defendant UMR, Inc*