UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JULIE A. SU,<br>Acting Secretary of Labor,<br>United States Department of Labor,<br><br>      Plaintiff,<br><br>  v.<br><br>UMR, INC.,<br><br>      Defendant. | CIVIL ACTION NO. 3:23-CV-00513 |

**STIPULATION AND MOTION FOR ORDER RE: DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

Plaintiff Julie Su, Acting Secretary of Labor, United States Department of Labor, and Defendant UMR, Inc., referred to individually as a "Party" or collectively as the "Parties," stipulate and agree as follows:

1. **PURPOSE**

The procedures and protocols outlined herein govern the production of electronically stored information ("ESI") and other Documents during the above-captioned case ("ESI Protocol"). The production of ESI (as defined below) and other Documents under this protocol shall also be subject to the provision(s) of any order(s) concerning confidentiality and/or privilege (including the Discovery Protective Order entered in this case, Dkt. 25). By agreeing to this ESI Protocol, the parties do not waive any objections to the authenticity or admissibility of produced ESI and other Documents, and the parties reserve all applicable objections under the Federal Rules of Civil Procedure.

This Order will govern discovery of ESI in this case as a supplement to the Federal Rules

of Civil Procedure, the Discovery Protective Order entered in this case (Dkt. 25), and any other applicable orders and rules.

2. **DEFINITIONS**

In addition to the terms defined throughout this ESI Protocol, the below terms shall be given the following meaning:

a. "Action" shall mean this litigation, Case Number: 3:23-cv-00513-wmc.

b. "Court" means the United States District Court for the Western District of Wisconsin, presiding over this Action.

c. "Document" is defined to be synonymous in meaning and equal in scope the usage of this term in Fed. R. Civ. P. 34(a)(1)(A). The term "Document" shall include ESI as defined herein.

d. "ESI" means information created, manipulated, communicated, stored (on-site and/or off-site), and best utilized in electronic, digital, and/or Native Format, including, without limitation, the following: e-mail; word-processing documents; spreadsheets; presentation documents; graphics; animations; images; audio, video, and audiovisual recordings; voicemail; text messages; and the like (including attachments to any of the foregoing) stored on databases, networks, computers, computer systems, servers, archives, backup or data recovery systems, removable media, the internet, handheld wireless devices, smart phones, and/or other storage media, requiring the use of computer hardware and software.

e. "Exact Duplicate" means a bit-for-bit copy of the Document content with exact Hash Value matches.

f. "Extracted Text" means the full text that is extracted electronically from Native

electronic files and includes all header, footer, and Document body information.

g. "Hash Value" means a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm (MD5 or SHA-1) applied to the characteristics of the data set. The MD5 and SHA-1 algorithms will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion.

h. "Load Files" mean electronic files provided with a production set of Documents and images used to load that production set into a Receiving Party's document review platform and correlate its data within that platform.

i. "Metadata" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, which describes the characteristics, origins, usage, and/or validity of the native file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting Documents or ESI, such as the custodian data source from which it was collected. Nothing in this ESI Protocol shall require any Producing Party to manually populate the value for any metadata field where such data is not contained in the original file.

j. "Native" or "Native Format" means the format of ESI in which it was generated

and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is an .xls or .xlsx file.

k. "Optical Character Recognition" or "OCR" means the optical character recognition technology used to read the text within electronic images of Documents and create a file containing a visible, searchable text format of such Documents.

l. "Producing Party" refers to the party which is producing Documents and/or ESI under this ESI Protocol.

3. **PRODUCTION MEDIA**

Relevant ESI should be produced electronically via secure file share/FTP or, for productions with a size of 100 gigabytes or more, on external hard drive with standard computer compatible interface (the "Production Media").

a. Each piece of Production Media shall identify the following:

   i. The Producing Party's name;

   ii. The production date; and

   iii. The Bates Number range of the materials contained on the Production Media.

4. **DE-DUPLICATION**

a. To the extent Exact Duplicates reside within a Producing Party's ESI data set, each Producing Party will undertake best efforts to de-duplicate responsive ESI (based on MD5 or SHA-1 Hash Values at the family level) on a global scale, or by manual document-by-document review of materials identified by Relativity's near duplicate tool as having greater than 99% similarity. Documents within a

4

       family shall be considered an Exact Duplicate only if the parent and all attachments are identical to another family. A family member shall not be treated as an Exact Duplicate merely because an identical copy of that family member is produced separately from that family.

b. No Producing Party shall identify and/or eliminate duplicates other than by use of the methods described in Paragraph 4(a) or, for email threads, the method outlined in Paragraph 4(c).

c. A Producing Party may also de-duplicate "near-duplicate" email threads as follows:

    i. In an email thread, only the final-in-time version of the thread need be produced, so long as all earlier-in-time emails in the thread are contained within the final message; however,

    ii. Where an earlier-in-time email contains an attachment, that email and attachment shall not be removed as a "near duplicate": such email families must be produced separate from the final-in-time version of the thread.

b. The Producing Party shall provide a duplicate custodian field ["CustodianAll"] that identifies each custodian from whom the Document was collected, including any custodians whose copy of the Document was removed because it was identified as an Exact Duplicate under this Paragraph 4.

c. Any Exact Duplicate or "near duplicate" Document that is not produced shall be preserved by the Producing Party.

5. **FORMAT FOR PRODUCTION**

Producing Parties shall produce their ESI as Tagged Image File Format (TIFF) files with

Extracted Text files and OCR only for any files without searchable text, and deliver them with load files, as described below. The production must contain all of the information and Metadata required by this ESI Protocol.

    a.    Each Producing Party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable identification process, such as using the then-current deNIST provided by the National Institute of Standards and Technology.

    b.    For emails with attachments, the Hash Value is generated based on the parent/child Document grouping. Parent/child relationships (the association between an attachment and its parent Document) shall be preserved to the extent possible. Attachments are to be produced contemporaneously and sequentially immediately after the parent Document.

    c.    If ESI has hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) associated with it, the Producing Party shall produce the ESI in a form showing such hidden text to the extent reasonably practicable. If producing hidden text is not reasonably practicable, the Producing and Receiving Parties shall meet and confer regarding possible alternatives.

    d.    Producing Parties are not obligated to manually populate any of the fields identified in this paragraph if such fields cannot reasonably be extracted from a document.

    e.    Producing Parties will make reasonable efforts to ensure that Metadata fields automatically extracted from the Documents are accurate (meaning, the metadata is associated with the file).

f. Native Files: The Parties agree that spreadsheets (e.g., .xls and .xlsx), drawings (e.g., .dwg, .dfx., .tbp, and .ifc), schedule files (e.g., .xer and .prx), modeling files, Microsoft Access or other databases and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi) shall be produced in Native Format as those files are held in the ordinary course of the Producing Party's business. Producing Parties shall provide slipsheets and load files containing the metadata for such Documents. To the extent such files are attached to an email, the slipsheet and metadata will be produced sequentially, consistent with the treatment of any other email families. If such a native file contains privileged information, it may be redacted by appropriate means, including by redaction after conversion to TIFF, and the native file may be withheld from the production, provided that an unredacted version must be maintained by the Producing Party.

g. If native files contain privileged information and cannot be redacted or produced in TIFF format, those native files will be logged on a Privilege Log that complies with Fed. R. Civ. P. 26.

h. Each production of ESI shall include an Opticon Image Load File containing the following comma-delimited fields: beginning Bates Number, Volume, Image File Path, Document Break, and Page Count.

i. Each production of ESI shall include a Concordance metadata file containing the following delimited fields:

| Field Name | Description | Redacted Documents |
|---|---|---|
| Author | Author of non-email file | EXCLUDE/ |

| Field Name | Description | Redacted Documents |
|---|---|---|
| | | Blank |
| To | Email [TO] (Names and Email Addresses); Separated by ";" (Semi-colon ASCII 59) | EXCLUDE/ Blank |
| From | Email [FROM] (Names and Email Addresses) | EXCLUDE/ Blank |
| BCC | Email [BCC] (Names and Email Addresses); Separated by";" (Semi-colon ASCII 59) | EXCLUDE/ Blank |
| CC | Email [CC] (Names and Email Addresses); Separated by ";" (Semi-colon ASCII 59) | EXCLUDE/ Blank |
| Subject/Title | Combined field of a Document's Title property and an email's subject. | EXCLUDE/ Blank |
| Sent Date/Sent Time | MM/DD/YYYY (Do not use "00" or "0000") and the time portion of the Sent date of an email, using Relativity Date Time format. | |
| Message Class | MailItem.MessageClass in the Outlook Object Model or PR_MESSAGE_CLASS in Extended MAPI) lists the Outlook item kind. For example, IPM.Note, IPM.Schedule.Meeting.Request, IPM.Task. | |
| All Custodian | This field should capture those custodians whose copy of the Documents were removed in the de-duplication processes described in this ESI protocol. | |
| Prod_BegDoc | Beginning Bates number. | |
| Prod_EndDoc | Ending Bates number. | |
| Prod_BegAttach | For attachments or other child Documents, the beginning Bates number for the entire family. | |
| Prod_EndAttach | For attachments or other child Documents, the ending Bates number for the entire family. | |
| Confidentiality | Indicates confidentiality designation under Discovery Protective Order, if applicable. | |
| File Extension | File Extension | |
| Hash Value | File Hash | |
| File Last Modified Date/ Time | MM/DD/YYYY (Do not use "00" or "0000"), using Relativity Date Time format. | |

| Field Name | Description | Redacted Documents |
|---|---|---|
| File Name | Original file name of Native Document, except as modified to protect privileged material or identity of a patient/member/non-party provider. | EXCLUDE/ Blank |
| Filepath | Location of the original document. The source should be the start of the relative path. | EXCLUDE/ Blank |
| Filesize | Filesize in bytes, numerical format | |
| Date Created / Time | Date Document was created in the following format MM/DD/YYYY, using Relativity Date Time formats. *Parties acknowledge that the Date Created field may not actually reflect the date and time the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date and time when the file was created in that particular location on the computer or on the other storage device location) | |
| Native File Path | Path or hyperlink to Documents being produced in Native Format | EXCLUDE/ Blank |
| Text Path | Relative path to Extracted Text or OCR for the Document. Full text should be excluded from the Load Files and provided in a separate text file. | For redacted documents OCR Text from Redacted Production Images will be provided. |
| Page Count | Number of pages for the Document | |

        j.      For ESI, each of the Metadata and coding fields set forth in the ESI table above that can be extracted shall be produced for that Document unless the document has been redacted, in which case the Metadata and coding fields will be excluded or blank, as indicated in the table above.

6. **ENCRYPTED OR PASSWORD-PROTECTED FILES**

    A Producing Party shall make reasonable efforts to remove any encryption or password protection prior to production. If the Producing Party cannot do so, it shall provide the requesting

9

Party any encryption keys or passwords needed to access produced ESI, to the extent such encryption keys or passwords are known to the Producing Party.

If a Party receives a production of ESI that contains privileged information or attorney-work product, the provisions of the Discovery Protective Order regarding privileged information shall govern.

7. **PRIVILEGED DOCUMENTS**

Documents and ESI containing privileged information shall be treated as follows:

a. If there is a conflict between the provisions of this Stipulated Order and the Discovery Protective Order entered by the Court in this Action (Dkt. 25), the Discovery Protective Order shall control.

b. Privileged email messages may be withheld from production, provided each privileged email is identified on a privilege log that complies with Fed. R. Civ. P. 26. The privilege log must disclose the existence of attachments to privileged email messages, but these attachments do not need to separately logged in the privilege log separately from, or in addition to, the privileged email. For privileged email messages, the privilege log shall identify the sender, all recipients (including all addressees, carbon copies, and blind copies), sent date, subject, and privilege asserted for each message, along with a general description of each message. The description of the subject matter shall describe the nature of each Document in a manner that, though not revealing information itself privileged, provides sufficient information to enable the Parties and the Court to assess the applicability of the privilege claimed.

c. Privileged, non-email Documents may be withheld from production, provided

    each such Document is identified on the privilege log described in subparagraph 14(d).  For privileged, non-email Documents, the privilege log shall identify the nature of the Document, the person who authored the Document, all persons who received the Document, Document date, and privilege asserted for each Document, along with a general description of each Document as set forth in subparagraph 14(d).

d. Each withheld email or Document shall be assigned a unique bates-label for organization and referencing.  When possible, Documents containing privileged and non-privileged information shall be produced with the privileged information redacted.  All nonprivileged attachments and family members shall be produced.  The privilege log shall state whether a Document has been produced with redactions for privilege.

e. The privilege log shall denote all attorneys with an asterisk.

f. The following categories of Documents protected by the attorney-client privilege and/or work product doctrine do not need to be contained on a Producing Party's privilege log, unless good cause exists to require that a Party do so: (1) communications exclusively between or materials generated by the Parties, their counsel, an agent of the Parties or their counsel, and/or any non-testifying experts after the date the initial complaint was filed in the Action; (2) materials protected from disclosure by Fed. R. Civ. P. 26(b)(4); (3) communications between testifying experts in this Action and any support staff assisting such experts with their expert report; (4) any communications exclusively between a Party and their counsel who represented the Party in connection with the United

        States Department of Labor investigation into UMR that formed the basis of this Action (including any agents of such counsel); (5) any attorney work product created by or at the direction of a Party's counsel in connection with the United States Department of Labor investigation into UMR that formed the basis of this Action.  For the avoidance of doubt, to the extent a Party asserts that any Documents are protected from disclosure by privileges other than the attorney-client privilege or work product doctrine, those Documents must be included on the Party's privilege log, unless the Document in question is also protected by the attorney-client privilege or work product doctrine and falls into one of the categories above.

g. Each Party reserves the right to challenge any Producing Party's privilege designations, redactions, and/or withholding of documents.  In the event of a dispute regarding privilege designations, redactions, and/or withholding of Documents, the Parties shall meet and confer before submitting the dispute to the Court for determination.

h. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

i. Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected Document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  By way of example only, the mere production of privileged or work-product-protected Documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or

state proceeding.  Treatment of any inadvertently produced privileged or otherwise protected material shall be governed by Paragraphs 27–29 of the Discovery Protective Order entered in this action (Dkt. 25).

### 8. COST SHIFTING

As a general matter, the costs of production pursuant to this ESI Protocol shall be borne by the Producing Party.  Nothing stated in this protocol, however, shall be deemed to limit any Producing Party from seeking relief from the Court, by way of motion or otherwise, for cost-shifting or cost-sharing.

### 9. MODIFICATION

Any practice and/or procedure set forth herein may be modified by written agreement of the Parties.  This ESI Protocol is without prejudice to any Party seeking later modification of the ESI Protocol upon a showing of good cause (e.g., if Document review or production reveal bases for such modification).  If the Parties cannot resolve their disagreements regarding such modifications, the Parties shall submit their competing proposals to the Court, which may modify this ESI Protocol for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

**IT IS SO ORDERED**, this the _____ day of _____, 2024, that the foregoing Stipulation is approved.

                                        ANITA M. BOOR
                                        UNITED STATES MAGISTRATE JUDGE

| | |
|---|---|
| DATE:   August 28, 2024 | Respectfully submitted, |

                                                                      *s/ Kevin St. John*
                                                                     KEVIN ST. JOHN
BELL GIFTOS ST. JOHN LLC
5325 Wall Street, Suite 2200
Madison, WI 53718
Tel: (608) 216-7990
kstjohn@bellgiftos.com

GEOFFREY M. SIGLER (admitted *pro hac vice*)
MATTHEW S. ROZEN (admitted *pro hac vice*)
ANDREW G.I. KILBERG (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave. NW
Washington, DC 20036
Tel: (202) 955-8500
gsigler@gibsondunn.com
mrozen@gibsondunn.com
akilberg@gibsondunn.com

*Counsel for Defendant UMR, Inc.*


*s/ Rosemary Almonte*
ROSEMARY ALMONTE
U.S. DEPARTMENT OF LABOR
Office of the Solicitor
201 Varick Street, Room 983
New York, NY 10014
Tel: (646) 264-3668
almonte.rosemary@dol.gov

LYDIA J. FAKLIS
U.S. DEPARTMENT OF LABOR
Office of the Solicitor
230 S. Dearborn St., Room 844
Chicago, IL 60604
Tel: (312) 353-6992
faklis.lydia.j@dol.gov

*Counsel for Plaintiff Julie A. Su, Acting Secretary of Labor, United States Department of Labor*